**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Genell HARE, Defendant-Appellant.**

No. 84–3819.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1985.

Anthony Bertucci, (Court-appointed), Baton Rouge, La., for defendant-appellant.

Randall B. Miller, Bradley C. Myers, Asst. U.S. Attys., Baton Rouge, La., for plaintiff-appellee.

Before CLARK, Chief Judge, THORN-BERRY and JONES, Circuit Judges.

CLARK, Chief Judge:

Genell Hare was convicted of conspiracy to manufacture and possess with intent to distribute both phenylacetone ($P_2P$) and methamphetamine and possession of $P_2P$ with intent to manufacture methamphetamine. The government obtained certain evidence used at Hare's trial through the search of a building conducted by Drug Enforcement Administration (DEA) agents pursuant to a search warrant issued by a United States Magistrate. The district court denied Hare's motion to suppress this evidence. On appeal, Hare argues that two statements contained in the affidavit submitted to obtain the search warrant should be excised and that, with or without those statements, the warrant was invalid because it lacked probable cause under the Fourth Amendment. We affirm.

## I

On May 4, 1984, a United States Magistrate in Houston, Texas issued a warrant, on the application of DEA agents, for the attachment of an electronic transmitter (beeper) device to a can of ether purchased by David Lnu based on information received by DEA that Lnu had placed an order for a number of chemicals used in the manufacture of $P_2P$ and methamphetamine. A Houston chemical company informed DEA that Lnu had ordered, among other things, ten pounds of phenylacetic acid, ten pounds of sodium acetate, five gallons of ether, one gallon of acetic anhydride and one reflux condensor, all of which are used in the manufacture of $P_2P$ and methamphetamine. The warrant authorized the DEA agents to monitor the beeper "until the electronic device leads to the ultimate destination and location where the manufacture of the controlled substance occurs." The agents observed Lnu pick up the chemicals and followed him from Houston to Rougon, Louisiana, where an unidentified male and female joined him in unloading the chemicals and placing them in a cinder block building adjacent to a residence.

On May 8 the DEA agents obtained a search warrant for the cinder block building based on an affidavit submitted by Dick Gustafson, a DEA agent. The affidavit recited the information above and also recited the following results of the DEA's two day surveillance of the building. At 4:00 a.m. on May 8 the female was observed going back and forth between the building and an adjacent residence and at 9:30 a.m. on May 8 the male and female bought large quantities of ice at a nearby store and subsequently took the ice to the building. After stating that large quantities of ice are used in the manufacture of $P_2P$ and methamphetamine, the affidavit stated that immediately after the ice was taken into the building, the beeper from the can of ether began emitting signals of a different frequency, indicating that the ether was then being used. The affidavit further explained that due to the possibility that contraband could be destroyed it might become necessary to execute the search warrant during the nighttime hours. The final paragraph of the affidavit stated that "[o]n May 8, 1984, at approximately 5:00 p.m., a Louisiana State Police chemist, conducting surveillance on the above described building, detected odors coming from said building which indicates that $P_2P$ is being manufactured." The affidavit was sworn and subscribed before the United States Magistrate at 6:10 p.m. on May 8.

On May 9 DEA agents searched the cinder block building and discovered evidence of a $P_2P$/methamphetamine lab in operation; this evidence led to Hare's indictment and conviction.

## II

Hare contends that the final sentence of the affidavit relating to the odors detected by the Louisiana State Police chemist constitutes a misrepresentation, made intentionally or with reckless disregard for the truth. Hare's contention revolves around the statement that the chemist "detected odors ... which indicates that $P_2P$ is being

manufactured." According to Hare, the statement implies that the chemist smelled $P_2P$ itself or at least smelled odors which led the chemist to believe that $P_2P$ was being manufactured. In fact, however, the chemist smelled only ether and the agents concluded from this that $P_2P$ was probably being produced.

### A

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that if an affiant makes an intentional or reckless misrepresentation in a warrant affidavit then such misrepresentation may not be considered in determining whether the affidavit establishes probable cause. *Id.* at 155–56, 98 S.Ct. at 2676, 57 L.Ed.2d at 672. As this court stated in *United States v. Namer,* 680 F.2d 1088, 1093 (5th Cir.1982), "if a search warrant affidavit contains a material misstatement made intentionally or with reckless disregard for the truth, the court should excise the offensive language from the affidavit and determine whether the remaining portion establishes probable cause."

■ The first question is whether the challenged statement was in fact false. That depends on how the statement is perceived. It reasonably can be read as saying that the chemist detected certain odors and, in the opinion of the affiant, such odors indicate that manufacture of $P_2P$ is presently occurring. Such a statement would not be false. On the other hand, it could be read as averring that the chemist detected odors which the chemist believed indicated the manufacture of $P_2P$ was taking place. Such a statement would be false.

Hare's challenge relies on *United States v. Namer, supra.* This reliance is misplaced. In *Namer* the challenged statement could not reasonably have been read in a truthful way. In that case the Deputy Commissioner of Securities for the State of Louisiana told an investigation team that certain loan instruments in which Namer was dealing "probably were securities within the meaning of the law." The members of the investigation team then drafted a warrant application stating that the Deputy Commissioner had told them that the offerings "are classified as securities." This court held that the statement in the application was false. *Id.* at 1093. It noted that the affidavit was drafted by two attorneys during a lengthy investigation; furthermore, "[t]he word 'classified' connotes the authoritative result of ordered procedures and methodologies, not an ad hoc and qualified oral opinion of a single agency employee." *Id.* at 1094. We held that the magistrate could only reasonably conclude that the loan instruments had been classified as securities under a formal classification procedure.

■ While in *Namer* "the affiant inaccurately described what had transpired," *id.* at 1094, in today's case the challenged statement, though ambiguous, reasonably could and should be read truthfully. Indeed, the district judge concluded that the challenged language was "substantially accurate and ... not misleading." A statement in a warrant affidavit is not false merely because it summarizes or characterizes the facts in a particular way. *See United States v. Waxman,* 572 F.Supp. 1136, 1143 (E.D.Pa.1983). If the magistrate believed that the statement was ambiguous and that a finding of probable cause was dependent on the precise meaning of the statement, he would have sought clarification or denied the warrant. Since he did neither, we hold the statement was truthfully made by the affiant and so perceived by the magistrate.

The final paragraph of the affidavit should not be excised.

### B

Hare also asserts that under the principles developed in *United States v. Karo,* — U.S. ——, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), this Court should excise from the affidavit the information concerning the change in frequency of the beeper. Because we conclude that the affidavit es-

tablishes probable cause even without this information, we do not reach this issue.[1]

### C

■ The affidavit submitted by the DEA averred that David Lnu had purchased a number of different chemicals used in the manufacture of $P_2P$ and methamphetamine. Lnu purchased these chemicals in the large quantities that would be associated with illegal drug manufacturing. At the same time Lnu purchased laboratory equipment that would be used in such manufacture, thus indicating that he was "involved in something more than a mere innocent storing of chemicals." *United States v. Gordon*, 580 F.2d 827, 833 (5th Cir.1978). This activity was suspicious enough in itself to cause the chemical company to alert the DEA. *See United States v. Radlick*, 581 F.2d 225, 229 (9th Cir.1978). Lnu then proceeded to transport the chemicals and equipment to a rural location in another state and place them in a cinder block building associated with a residence. *See United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir.1980) ("[t]he fact that no legitimate business use of such large quantities of chemicals appeared to be taking place at [the defendant's] residence further buttresses the probability that an illegal use was occurring"). The mere fact that activity between that building and the adjacent residence occurred is not inherently suspicious, but, when one considers the preceding facts and that the movements took place at 4:00 a.m., they then do tend to corroborate the impression that illegal activity is in progress.

The next morning, occupants of the building went out and bought large quanti-ties of ice, another item associated with the manufacture in question. Finally, we have the fact that the chemist smelled ether, thus indicating that the chemicals were actually being used in the building in question.

While any one of these facts, considered in isolation, might seem innocent enough, the evidence as a whole produces a sum greater than its parts. *United States v. Fooladi*, 703 F.2d 180, 184 (5th Cir.1983). The affidavit without the surmise that a change in frequency of the beeper signal indicated ether was in use, was more than sufficient to support a determination that $P_2P$ was probably being manufactured in the cinder block building. Hare argues that many drug manufacturing cases in which probable cause has been found have involved facts, such as the use of fictitious names, a suspect's prior criminal record or an informant's tip, that were not present here. No such facts are essential to every ad hoc determination of probable cause. Probable cause has been found in cases with facts substantially similar to the present case. *See United States v. Packer*, 730 F.2d 1151, 1155 (8th Cir.1984) (purchase of chemicals and equipment commonly used in illegal drug manufacture, transportation of these items to a residence lacking the outward appearance of a legitimate laboratory business and activity at the residence suggesting use of the chemicals—held sufficient to establish probable cause). *See also United States v. Fooladi, supra.*

Deference is due the magistrate's common sense determination of probable cause in the particular case from all relevant surrounding facts and circumstances.[2]

---

1. We note, however, the curious position that Hare takes with respect to the *Karo* issue. Noting that the beeper warrant allowed the agents to monitor the beeper until the ether reached its ultimate destination, Hare contends that monitoring should have ceased because "[t]he placement of the chemicals in the building, the constant activity between the building and an adjacent building, and the purchase of ice associated with the manufacture of methamphetamine put the agents on notice that the chemical had in fact reached its ultimate destination." Thus, in her argument on this subsidiary issue Hare con-cedes a principal question in this case, i.e., that the agents possessed sufficient information to demonstrate probable cause existed warranting a search of the building for a methamphetamine lab. Our resolution of the issue of probable cause also makes it unnecessary to address the government's argument that the "good faith" exception to the exclusionary rule is applicable.

2. Given the marginal value of the information regarding the change in beeper frequency (all it established was that the ether had been opened and this fact was independently ascertained by

*United States v. Minis,* 666 F.2d 134, 138 (5th Cir.1982). That determination was correct here.

### III

In sum, since we find the final paragraph of the search warrant affidavit was not untrue and the affidavit, with the paragraph concerning the change in beeper frequency excised, established probable cause to issue the search warrant, the judgment of the district court is

AFFIRMED.

the chemist), we do not believe that it was material to the magistrate's finding of probable cause.