**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Clifford Farrell SINGER, Defendant–Appellant.**

**No. 91–7367**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1992.

Mike Aranson, Daniel M. Shapiro, Aranson & Associates, Dallas, Tex., for defendant-appellant.

J. Michael Worley, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Clifford Farrell Singer appeals his conviction and sentence for conspiracy to possess and distribute cocaine and aiding and abetting a violation of the narcotics laws. We affirm.

I

The arrest and prosecution of Clifford Singer were the product of a cooperative effort among Texas, California, and federal

authorities. In January of 1990 United States Postal Inspectors, pursuant to a search warrant, opened a package addressed to Brian Bader of Arlington, Texas. They found a plastic bag containing a substance that Postal Inspector Meyers recognized, and later confirmed by the lab to be cocaine. Shortly after the package containing the cocaine was delivered to Bader on the following day, police officers entered Bader's residence. The officers found Bader seated at a table processing the cocaine. A search turned up documents linking Bader to defendant Singer. Upon his arrest Bader agreed to cooperate with the government in the prosecution of Singer, the man he identified as the source of the cocaine. Pursuant to a warrant, police officers arrested Singer the next day and searched his California residence. The officers found shipping forms, moneygrams, checks, a scale, and a large amount of cash and silver during the search. Singer and Bradley Howard Friedman were charged in a two count indictment. Singer was charged in count 1 with conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 U.S.C. 846 and in count 2 with aiding and abetting a violation of 21 U.S.C. § 841(a)(1).

Bader and Singer's co-defendant Friedman testified on behalf of the government at trial. Bader testified that he regularly ordered cocaine from Singer over the phone. According to Bader, Singer sent cocaine via UPS and U.S. Mail for which he paid by sending moneygrams to Singer in California. Bader testified that Singer sold him approximately six ounces of cocaine a week during the year preceding Bader's arrest. Friedman testified that he served as a middleman for cocaine purchases between Singer and other persons, including Bader. Friedman testified that Singer had shipped from three to seven ounces of cocaine a week to Dallas since the middle of 1988, with Friedman receiving a fee for each ounce. The government supplemented this testimony by introducing moneygrams and a check which Bader and Friedman stated they sent to Singer as payment for cocaine.

The jury found Singer guilty on both counts and he was sentenced to two concurrent 108-month prison terms plus a four-year term of supervised release.

## II

Singer raises several points of error on appeal. First, Singer maintains that the district court should have excluded evidence seized at his California residence. Second, he contends that the district court erred in failing to respond to the government's lack of compliance with discovery orders and the Jencks Act, 18 U.S.C. § 3500, with appropriate sanctions. Third, he argues that the evidence adduced at trial was insufficient to support his conviction. Singer finally challenges the sentence imposed by the district court. We find these objections meritless and affirm Singer's conviction and sentence.

## A.

Singer challenges the search of his California residence on three grounds. First, he claims that the warrant authorizing the search of the home was invalid because the supporting affidavit contained an intentional falsehood. Second, he claims that the district court also should have excluded all the evidence seized from his home because the government did not comply with Fed. R.Crim.P. 41(a). Singer's third objection seeks the suppression of only that evidence obtained from two automobiles located on his property. He argues that even if the search of his residence was proper, the cars were outside the scope of the warrant. We examine these arguments in turn.

Singer first contends that the affidavit supporting the warrant authorizing the search of his California residence contains an intentional falsehood. A court must disregard any intentional or reckless misrepresentation in a warrant affidavit in determining whether the affidavit establishes probable cause. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Namer*, 680 F.2d 1088, 1093 (5th Cir.1982). Singer argues that once the affidavit is purged of the challenged falsehood, proba-

ble cause no longer exists, and the district court should not have admitted the fruits of this search into evidence.

Singer's argument rests on an apparent discrepancy between the affidavit and a DEA report. Officer Sullivan's affidavit states that "Bater [sic] further stated that ... Singer told Bater that he maintained supplies of cocaine at his residence." The DEA report contains this statement: "[Blank] reports that Singer does not keep his supply of cocaine inside his residence. Singer supposedly conceals the cocaine in a storage safe built into the floor of his garage or keeps it at this girlfriend's residence." The district court concluded that the challenged statement was not false and denied the motion to suppress. We cannot disagree.

As this court stated in *United States v. Hare*, 772 F.2d 139, 141 (5th Cir.1985), "[a] statement in a warrant affidavit is not false merely because it summarizes or characterizes the facts in a particular way." As in *Hare*, we find that the "challenged statement, though ambiguous, reasonably could and should be read truthfully." *Hare*, 772 F.2d at 141. Here, the term "residence" could reasonably and sensibly be read to include Singer's garage, thereby removing the facial inconsistency on which Singer relies.

Singer relies heavily upon *United States v. Bennett*, 905 F.2d 931 (6th Cir.1990). *Bennett*, however, presents a different case, for there the affiant himself testified that the challenged statements were false. *Bennett*, 905 F.2d at 934. As in *Namer* but not in *Hare* or the present case, "the challenged statement could not reasonably have been read in a truthful way." *Hare*, 772 F.2d at 141. The district court did not err in rejecting Singer's argument.

■ Singer next contends that the involvement of federal authorities, along with California and Texas police officers, in the investigation made it federal, subject to the strictures of the Federal Rules of Criminal Procedure. Asserting that the officers conducting the search of his residence did not comply with Rule 41(a), Singer argues that the evidence obtained from his residence must therefore be suppressed.

The warrant authorizing the search of Singer's residence was issued by a state judge at the request of a state police officer. In *United States v. McKeever*, 905 F.2d 829, 833 (5th Cir.1990) (en banc), this Court held that "Rule 41 only applies to warrants issued upon the request of a federal law enforcement officer or attorney for the government." The district court properly held that Rule 41(a) does not apply in this case. *See also United States v. Shaw*, 920 F.2d 1225, 1229 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991).

Singer attempts to escape the effect of *McKeever*'s broad rule by asserting that here there was collusion between state and federal officers, an issue the *McKeever* court left open. 905 F.2d at 833 ("No issue of collusion between state and federal officers in procuring the warrant to avoid Rule 41 is implicated in this case."). Cooperation among federal and state authorities does not, however, constitute the sort of "collusion" cited in *McKeever*. *McKeever* itself held that "no issue of collusion ... is implicated" even though federal authorities joined state officers in executing the very search at issue. 905 F.2d at 830. By contrast, no federal authorities were involved in the search of Singer's home in this case. Singer offers no evidence of collusion beyond his contentions that the investigation was essentially a "federal operation." Thus, assuming *arguendo* that a demonstration of collusion between state and federal officials would render the requirements of Rule 41 applicable to a search warrant obtained by a state police officer, a question we do not decide, Singer has made no such showing. The district court did not err in refusing to exclude the evidence obtained from the search.

■ Singer also argues that evidence obtained through a search of two automobiles located on his property must be suppressed. He maintains that the omission of any express mention of automobiles in the warrant makes their search warrantless. We agree with the district court,

however, that the cars were within the legitimate scope of the warrant authorizing a search of the "premises." This court has consistently held that a warrant authorizing a search of "the premises" includes vehicles parked on the premises. *United States v. Cole,* 628 F.2d 897, 899 (5th Cir. 1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981). *See, e.g., United States v. Freeman,* 685 F.2d 942, 955 (5th Cir.1982) (holding that "the warrant for a search 'on the premises known as 256 Seadrift Road' was sufficiently particular to permit a search of [a jeep] parked on the premises off the street and close to the house"); *United States v. Napoli,* 530 F.2d 1198, 1200 (5th Cir.) (holding that "the reference to 'on the premises known as 3027 Napoleon Avenue' was sufficient to embrace the vehicle parked in the driveway on those premises"), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). The district court did not err in refusing to suppress evidence obtained through this search.

### B.

■ Singer next contends that the government failed to comply with the district court's discovery orders and did not provide Singer with materials required under the Jencks Act, 18 U.S.C. § 3500. He argues that the district court erred in refusing to impose sanctions on government for these violations, or at least grant Singer a continuance. The government concedes that it did not comply fully with the discovery orders, but argues that the court's responses, which included sanctions in certain instances, were appropriate.

■ Rule 16 of the Federal Rules Criminal Procedure governs the discovery process. Errors are subject to review under an abuse of discretion standard; reversal is appropriate only if the defendant can show prejudice to his substantial rights. *United States v. Ellender,* 947 F.2d 748, 756 (5th Cir.1991); *United States v. Garcia,* 917 F.2d 1370, 1374 (5th Cir.1990).

Singer offers no showing of prejudice to his substantial rights beyond generalized assertions of "extreme prejudice" and "ambush." Singer cites several instances in which the government sought to introduce materials of which Singer was unaware. The record reflects, however, that on each occasion the district court conducted a careful inquiry into the nature of the material, the reasons for its lateness, and whether defense counsel was unaware of this material. With one minor exception (Singer's driver's license), the court excluded any material that defense counsel claimed it had not earlier received. Similarly, the district court granted defense counsel a continuance in the only instance where Singer alleged that the government had not provided Jencks materials. Singer has not demonstrated prejudice to his substantial rights or that the district court abused its discretion.

### C.

■ Singer also claims that the evidence introduced by the government at trial is insufficient to support his conspiracy conviction. Since Singer did not move for a judgment of acquittal at any time during the trial, *see* Fed.R.Crim.P. 29, our review of the evidence is limited. We may set aside the conviction only if its affirmance would result in a "manifest miscarriage of justice." *United States v. Hernandez,* 962 F.2d 1152, 1156 (5th Cir.1992); *United States v. Pruneda–Gonzalez,* 953 F.2d 190, 193 (5th Cir.1992); *United States v. Robles–Pantoja,* 887 F.2d 1250, 1254 (5th Cir. 1989). Under this standard, Singer's conviction may be reversed only if "the record is 'devoid of evidence pointing to guilt.'" *Pruneda–Gonzalez,* 953 F.2d at 194 (quoting *Robles–Pantoja,* 887 F.2d at 1254).

■ To establish the elements of a conspiracy conviction under 21 U.S.C. § 846, the government must show, beyond a reasonable doubt, that (1) an agreement existed between two or more persons to violate the narcotics laws; (2) the defendant knew of the conspiracy and intended to join it; and (3) that defendant voluntarily participated in this conspiracy. *United States v. Guerra–Marez,* 928 F.2d 665, 674 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 322,

116 L.Ed.2d 263 (1991). We find that there is sufficient evidence in the record to support the jury's verdict.

 Much of the evidence supporting Singer's conspiracy conviction at trial consisted of the testimony of Bader and Friedman, his former partners. Singer argues that this testimony is insufficient as a matter of law, citing this court's statement that "the existence of a conspiracy must be proven by corroborating evidence independent of that of the alleged co-conspirators." *Guerra–Marez*, 928 F.2d at 674 n. 10. *Guerra–Marez* was, however, not referring to the sufficiency of the evidence in a conspiracy trial, but to the admissibility of out-of-court statements made by co-conspirators under an exception to the hearsay rule, an entirely different matter. The uncorroborated testimony of an accomplice or co-conspirator will support a conviction, provided that this testimony is not incredible or otherwise insubstantial on its face. *See, e.g., Hernandez*, 962 F.2d at 1157; *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir.1991); *United States v. Gardea Carrasco*, 830 F.2d 41, 44 (5th Cir.1987).

During the trial the government introduced moneygrams, checks, and shipping receipts tying Singer to Bader and Friedman. These documents, along with the testimony of Bader and Friedman, are sufficient to support Singer's conviction.

### D.

Singer challenges the 108–month sentence imposed by the district court. He contends that the district court misapplied the Sentencing Guidelines in increasing his sentence for obstruction of justice and his role as an organizer/leader. Singer also charges that the court erred in failing to decrease the sentence for his acceptance of responsibility.

Sentencing determinations often involve issues of credibility, *United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir. 1989) (obstruction of justice); *United States v. Barreto*, 871 F.2d 511, 512 (5th Cir.1989) (organizer/leader); *United States v. Brigman*, 953 F.2d 906, 909 (5th Cir. 1992). We find that none of these challenged determinations is clearly erroneous and affirm Singer's sentence.

 Singer challenges the two-level increase for obstruction of justice imposed by the district court. The guidelines provide that such an increase is warranted "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." U.S.S.G. § 3C1.1. The presentence report stated that Singer made several threats against Friedman and Bader in order to keep them from testifying against him. Singer denies making such threats, and stresses that a defendant's "statements or testimony should be evaluated in a light most favorable to the defendant." § 3C1.1 n. 1. Rather than directing the court to accept the defendant's account in instances of disagreement, however, this "note simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." *Franco–Torres*, 869 F.2d at 801. The district court's reliance on the presentence report rather than "defendant's version of the facts" thus is not clearly erroneous. *United States v. Beard*, 913 F.2d 193, 199 (5th Cir.1990).

 Singer next challenges the two-level increase assigned by the district court for his role as an organizer or leader. Such an increase is warranted "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity ..." § 3B1.1(c) The district court adopted the findings of the presentence report, which stated that Singer was the organizer of a conspiracy to distribute cocaine, and "used a chain of command in his distribution scheme" with "Friedman as a middleman and Bader as a cocaine distributor." The district court's finding that Singer's conduct met the organizer requirement is not clearly erroneous under the relevant statutory factors. *See* § 3B1.1 n. 3; *Barreto*, 871 F.2d at 512.

Singer finally contends that the district court erred in failing to award a two-level

reduction for his acceptance of responsibility. A reduction is proper when "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1. The district court found that Singer refused to discuss the offense conduct with his probation officer, and that the only evidence offered by Singer at the sentencing hearing, a letter, contained nothing approaching an acceptance of responsibility.

Singer contends that the Sentencing Guidelines' acceptance of responsibility provision impermissibly requires individuals to admit guilt in order to receive a sentence reduction. Citing *United States v. Perez–Franco*, 873 F.2d 455 (1st Cir. 1989), Singer urges that the Fifth Amendment bars the state from conditioning an important benefit such as a sentence reduction on a defendant's willingness to incriminate himself. *See also United States v. Oliveras*, 905 F.2d 623 (2d Cir.1990).

The cases cited by Singer hold that the government may not require defendants to accept responsibility for offenses of which they have *not* been convicted as a condition for sentence reduction. However, a defendant "must accept responsibility for all facets of the crime to which he either pled guilty or of which he was convicted." *Oliveras*, 905 F.2d at 629; *Perez–Franco*, 873 F.2d at 463. Thus, even if this court were to follow these decisions, *but cf. United States v. Mourning*, 914 F.2d 699, 707 (5th Cir.1990), Singer would not prevail. The district court did not err in declining to reduce Singer's sentence based on his acceptance of responsibility.

### III

We find that each of the objections raised by Singer lacks merit. His conviction and sentence are therefore AFFIRMED.