**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2012

No. 11-10653

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

KARLOS MARSHALL,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-158-1

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

This appeal concerns two rulings made in a criminal trial that resulted in the conviction and imprisonment of the defendant, Karlos Marshall, for being a felon in possession of a firearm. The first ruling involved the proper sanction for a criminal discovery violation committed by the government. The second involved the admission of photographic evidence offered by the government. Because Marshall was not entitled to a stronger sanction for the government's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10653

discovery violation, and because the government's photographic evidence was admissible, we AFFIRM Marshall's conviction and sentence.

I.

At about 4:00 a.m. on February 12, 2010, Officer Bennight of the Dallas Police Department was checking vehicle registrations at a gas station when he learned that a Chevrolet Tahoe parked there had been reported stolen. Officer Bennight had observed defendant Marshall exit the driver's door of the Tahoe and enter the station's convenience store, so he waited in his marked patrol car for Marshall to return. When Marshall emerged from the convenience store, however, he did not return to the Tahoe but instead got into the front passenger seat of a Volvo parked at a gas pump.

Officer Bennight approached the Volvo and advised Marshall that he was investigating a report of a stolen vehicle. He requested that Marshall step out of the car and, when Marshall acquiesced, frisked him. He found a set of keys in Marshall's pocket, but they did not open the locked Tahoe. He next searched the convenience store but did not find the keys to the Tahoe there, either. Finally, an assisting officer searched the area of the Volvo where Marshall had been sitting and found the keys to the Tahoe on the floorboard of the Volvo.

Next, Officer Taylor entered the Tahoe, where he found the center console's lid open and upright. The console was divided into two compartments, one smaller and one larger. In the smaller compartment, a revolver was sitting upright on its handle and tip, but leaning against the driver's side of the console; the compartment was too small to admit of its lying flat on its side.

Marshall was subsequently indicted for being a felon in possession of a firearm. He was offered a plea bargain of ten years of imprisonment, which he declined.

Relevant to this appeal, shortly before trial the government emailed defense counsel advising him of statements Marshall had made to officers on the

2

night of his arrest, among them Marshall's statement, "I just borrowed it from a friend," a statement not supported by the government's evidence at trial. In his opening statement at trial, defense counsel orated that "he [Marshall] was driving a car that he, when questioned about, said that it was borrowed," presumably laying the groundwork for a defense theory that Marshall may have been unaware of the contents of the Tahoe's console. Defense counsel's forecast proved unsupported, however, when Officer Bennight testified that Marshall, when asked about the Tahoe on the night of his arrest, had denied knowing anything about the vehicle, rather than saying he had borrowed it from a friend.

Marshall objected to the inconsistency between Officer Bennight's testimony and the government's pre-trial disclosure. He requested that the court either excise by instruction to the jury the disputed portion of Officer Bennight's testimony, allow him to call as a witness the prosecutor who had emailed the pre-trial disclosure, or declare a mistrial. The court denied those requests but permitted counsel and the government to stipulate to an explanation for the discrepancy. The resulting stipulation, read to the jury by the government, went as follows:

> The government will stipulate that when we sent [defense counsel] notice of a certain statement, that is, what Mr. Marshall stated to one of the officers that night[,] the statement was that he just borrowed the car, and that none of the officers today remember that statement.

The government, however, in its closing argument, referred to Officer Bennight's trial testimony that Marshall said he knew nothing about the Tahoe: "If Karlos Marshall is walking away from the car and he doesn't know anything about the car, when initially questioned, he's walking away from what's inside that car. And what's inside the car is this gun." The defense, on the other hand, urged the jury that the government would not have provided the pre-trial disclosure had

No. 11-10653

an officer not reported that Marshall said he had borrowed the Tahoe, and that Officer Bennight's trial testimony to the contrary was untruthful.

Relative to the second issue raised in this appeal, the government called Agent Camune of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to testify, in part, on the position of the revolver in the Tahoe's console. To visually aid her testimony, Agent Camune presented photographs of her own revolver in various positions in the Tahoe's console. Marshall objected that the photographs were irrelevant because Agent Camune's revolver was a different size than the one found in the Tahoe. The court nevertheless allowed the photographs.

Following a two-day trial and brief jury deliberation, Marshall was convicted. As he had two prior convictions for serious drug offenses and one for a crime of violence, he was sentenced to 15 years of imprisonment, the minimum under the Armed Career Criminal Act, 18 U.S.C. § 924(e). He has timely appealed.

## II.

Marshall contests both the district court's choice of sanction for the government's discovery violation and its admission of the photographs of Agent Camune's revolver. We take them in turn.

## A.

The Federal Rules of Criminal Procedure require the government, upon request, to disclose to a defendant any oral statement that he made in response to interrogation if the government intends to use the statement at trial. Fed. R. Crim. P. 16(a)(1)(A). Although the government's email was misleading, there was no objection that it was intentionally so. There is no question, however, but that the government's pre-trial email to defense counsel constituted a discovery violation because it failed accurately and completely to disclose Marshall's oral statements. The question is whether the sanction imposed–stipulation to the jury–was adequate.

No. 11-10653

A district court's choice of sanction for a criminal discovery violation is reviewed for abuse of discretion. *United States v. Singer*, 970 F.2d 1414, 1418 (5th Cir. 1992). A court is to impose the least severe sanction necessary in the light of the following considerations: "(1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *United States v. Garza*, 448 F.3d 294, 299-300 (5th Cir. 2006). Reversal is appropriate only if the defendant can show that the violation prejudiced his substantial rights. *Singer*, 970 F.2d at 1418.

Marshall identifies two forms of prejudice he suffered as a consequence of the government's discovery violation. First, he contends that his defense counsel relied on the pre-trial disclosure to his detriment at trial. When his opening prediction of the government's evidence proved false, counsel lost credibility with the jurors. Moreover, had counsel been aware that Officer Bennight would testify that Marshall had disclaimed knowledge of the Tahoe, rather than saying it was borrowed, he may have focused on a different defense, perhaps that the person Officer Bennight saw exiting the Tahoe was not Marshall at all.

Second, Marshall maintains the discovery violation influenced his decision before trial to reject the government's plea offer. If defense counsel had known Officer Bennight would testify that Marshall had disclaimed knowledge of a vehicle he had just been seen exiting, he may have advised him to plead guilty because the denial created a greater appearance of guilt. Marshall's prison sentence is five years longer than it would have been had he accepted the government's offer.

1.

a.

As for the first of the alleged harms–the undermining of defense counsel's credibility and of his chosen defense theory–we do not think "the nondisclosure

could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *United States v. Webster*, 162 F.2d 308, 336 (5th Cir. 1998). As the district court found in denying Marshall's motion for new trial, in addition to Officer Bennight's testimony that Marshall attempted to distance himself from the Tahoe, the government presented evidence that: Marshall was seen exiting the driver's door of the Tahoe and entering the convenience store; no one else was in the Tahoe; when Marshall left the store, he walked past the Tahoe and sat in a Volvo; the keys to the Tahoe were found hidden in the Volvo where Marshall had been sitting; when Officer Taylor entered the Tahoe, he found the center console's lid open and upright; and when Officer Taylor looked in the console, he found a revolver sitting upright in the smaller, driver's side compartment.

Whether Marshall claimed to be ignorant of the Tahoe or to be borrowing it, he still offers little explanation for the evidence connecting him to the vehicle and the revolver inside. In the light of the totality of that evidence, we cannot say "there is a reasonable probability that, had the [non-disclosed] evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

b.

Marshall proposed to the district court three possible remedies for the government's discovery violation: excision of the disputed portion of Officer Bennight's testimony, permission to call a prosecutor as a witness, and mistrial. The court rejected all three measures. Marshall contends he was entitled to one of these instead of the sanction chosen by the court, a stipulation. We disagree.

Excising a portion of Officer Bennight's testimony would have been a weaker protection of Marshall's rights than an artful stipulation. Had the district court ordered the excision, defense counsel's forecast of the evidence still would have been incorrect, and the jury would have been left to wonder why.

No. 11-10653

The remedy of a stipulation at least allowed defense counsel the opportunity to salvage some credibility and to cast doubt on Officer Bennight's trustworthiness. As for calling a prosecutor as a witness, the prosecutors attributed the incorrect statement to a police officer who was unavailable to testify and who, in any event, could not remember the statement being made.  Lacking any further insight into the mistake, the prosecutor could have said little more than what the stipulation said.

The grant of a mistrial may not have been an abuse of discretion in the circumstances, but one was not required.  As discussed above, given the weight of the evidence against Marshall, there is not a reasonable probability that an accurate and complete pre-trial disclosure would have made for a different outcome. *Webster*, 162 F.2d at 336.

The choice of sanction imposed was adequate to safeguard Marshall's substantial rights.  *Singer*, 970 F.2d at 1418.

2.

Marshall next argues the inadequate pre-trial disclosure colored defense counsel's appraisal of the evidence and, consequently, influenced his decision to plead not guilty.  As the government points out, Marshall did not raise this theory of prejudice to the district court either at the time of his objection to Officer Bennight's testimony or in his motion for a new trial.

Only in rare circumstances do we consider an argument raised for the first time on appeal. *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011).  In any event, we find no prejudice.  Again, regardless of the disclaimer or explanation Marshall gave for the Tahoe, he could not refute the considerable evidence connecting him to the vehicle and the revolver in its console.  The defense was aware of that evidence prior to trial and yet declined the government's plea offer.  Given this weight of the evidence, we are not persuaded

that the discovery violation meaningfully impacted Marshall's decision to plead not guilty.

## B.

Finally, Marshall appeals the admission, over his relevance objection, of the photographs of Agent Camune's revolver. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . misleading the jury." Fed. R. Evid. 403. Marshall contends the evidence was irrelevant or, alternatively, that the danger of misleading a jury is especially acute where, as here, the evidence is a re-enactment that is similar enough to be confused with the actual event but not similar enough to represent the actual event faithfully, *Muth v. Ford Motor Co.*, 461 F.3d 557, 566-67 (5th Cir. 2006). A district court's admission of evidence over a relevance objection is reviewed for abuse of discretion. *United States v. Nutall*, 180 F.3d 182, 189 (5th Cir. 1999).

The disputed photographs, although not particularly probative, at least aided Agent Camune's testimony about the nature of the console and how a revolver might fit in the console. The photographs thus had some tendency, albeit slight, to demonstrate how the revolver fit in the console more effectively than could have been done in their absence. The dissimilarities between the revolver in the photographs and the revolver found in the Tahoe were made plain for the jury in both direct and cross examination, thus lessening the chance that the evidence would mislead. *See Carson v. Polley*, 689 F.2d 562, 579 (5th Cir. 1982) (explaining danger of misleading jury can be lessened where dissimilarities between evidence and actual events are made clear). On this last point we note that, although the government does not argue forfeiture, the basis

No. 11-10653

for Marshall's objection at trial was relevance, not a tendency to mislead. Admission of the photographs was not an abuse of discretion.

## III.

We close with a summary of what we have decided:  The government committed a discovery violation, which the district court remedied by ordering the government to stipulate to the jury that it had committed the violation. Marshall argues he was entitled to excision of a disputed portion of testimony, to call a prosecutor as a witness, or to a mistrial.  Because the district court's choice of sanction was adequate to safeguard Marshall's substantial rights, the court did not abuse its discretion.

The government also presented photographic evidence that did not represent the charged crime exactly.  Despite the shortcomings of that evidence, it was relevant, and any danger of misleading the jury was ameliorated by sufficient explanation of the dissimilarities between the evidence and the actual events.

The conviction and sentence are therefore

AFFIRMED.