# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30196

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

HARRY BERRY, also known as Slim Berry,

Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

December 1, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CR-271-4

Before JONES, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Harry Berry appeals the district court's denial of two motions to suppress. The first motion challenged the warrantless, long-term GPS surveillance of Berry's vehicle by the Drug Enforcement Agency ("DEA"). The second motion challenged the length of Berry's detention during a traffic stop conducted by Louisiana State Police ("LSP") troopers. Both motions sought to suppress heroin discovered in Berry's vehicle during the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30196

stop. For the reasons stated below, we AFFIRM the district court's denial of both motions to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 2010, DEA agents in New Orleans began investigating Berry for his suspected involvement in a narcotics trafficking ring. As part of their investigation, the DEA agents obtained a warrant to monitor Berry's cell phone from approximately May 27, 2011 to July 31, 2011.[1] The wiretap gave agents the ability to monitor Berry's phone calls and track the location of his cell phone. On June 9, 2011, DEA agents also installed a GPS tracking device on Berry's car without a warrant while it was located in the parking garage of a hospital. The tracker was on the vehicle until Berry's arrest on August 20, 2011—a total of seventy-three days. Although the tracker was capable of constant monitoring, agents had only set the tracker to send an e-mail alert when the vehicle travelled past a certain location, called a "geofence." The Government contends that "agents did not monitor Berry's movements 24 hours per day" and the tracker simply served as a "back-up" to the wiretap on Berry's cellphone. But the DEA acknowledged that the GPS tracker was used to track Berry's movements between July 31 and his arrest on August 20—a period during which Berry's calls were not being monitored.

Over the course of their investigation, DEA agents observed Berry travel to Houston at least three times to meet with coconspirators. During at least two of these trips, agents observed Berry visit an apartment that they later discovered was a "stash location" for Berry and several coconspirators. After at least two of the trips to Houston, DEA agents observed Berry or a coconspirator

---

[1] There is some conflicting testimony in the record as to whether the warrant continued without interruption during this period.

No. 15-30196

throw away materials "consistent with the packaging material of drug traffickers," and these materials tested positive for heroin residue.

On August 20, 2011, DEA agents received an alert that Berry's vehicle had passed a geofence, indicating that he was making another trip to Houston. DEA agents in New Orleans then alerted agents in Houston of Berry's impending arrival and requested surveillance. Suspecting he would be travelling back to New Orleans with a sizeable amount of heroin, DEA agents met with LSP troopers to brief them on Berry's suspected involvement with narcotics trafficking. Several troopers set up surveillance along Interstate 10 and Berry was pulled over for a traffic violation by Trooper Jason St. Romain.

During the traffic stop, Berry gave Trooper St. Romain his license and registration, which Trooper St. Romain used to conduct a record and background check. The records search revealed that Berry had a criminal history but that there were no outstanding warrants for his arrest. After the records search was complete and Berry refused to consent to a search of his vehicle, Trooper St. Romain deployed a police dog, Niko, to conduct a sniff search.

At a suppression hearing, Trooper St. Romain testified that Niko alerted to or indicated the presence of narcotics at several locations around the vehicle, which prompted Trooper St. Romain and his partner to search the vehicle. Their search included a search of the truck bed and its contents, which lasted about forty-five minutes. Trooper St. Romain testified that when Niko was redeployed to the interior of the vehicle, "she went immediately to the speaker box" and indicated narcotics were present. Inside the speaker box, Trooper St. Romain found 2.5 pounds of heroin.

Berry was ultimately charged with one count of conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846, and three counts of using a communication device to facilitate narcotics trafficking, in

3

No. 15-30196

violation of 21 U.S.C. § 843(b). Berry filed two separate motions to suppress the heroin found during the stop. The first challenged the government's warrantless GPS tracking of Berry's vehicle. The second challenged the extension of the traffic stop and subsequent search of his vehicle. The district court denied both motions. Berry entered a conditional guilty plea, reserving his right to challenge the suppression rulings. He now appeals the district court's denial of both motions.

## II. DISCUSSION

In an appeal of a suppression ruling, this Court "reviews questions of law *de novo* and questions of fact for clear error." *United States v. Cooke*, 674 F.3d 491, 493 (5th Cir. 2012). A finding of fact is "clearly erroneous only if the court is left with a definite and firm conviction that a mistake has been committed." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Evidence introduced at a suppression hearing is viewed "in the light most favorable to the prevailing party (here, the government)." *Cooke*, 674 F.3d at 493. And the district court's ruling will be upheld "if there is any reasonable view of the evidence to support it." *Id.* (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)). Since this case involves a warrantless search and seizure, "the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *United States v. Jones*, 132 S. Ct. 945, 949 (2012) (quoting U.S. Const. amend. IV). Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (quoting *Mincey v. Arizona*, 437 U.S. 385,

4

390 (1978)). The protections of the Fourth Amendment "extend[] to vehicle stops and temporary detainment of a vehicle's occupants." *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013) (citing *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993)). This appeal involves two motions to suppress evidence challenging two different warrantless searches. Each is addressed in turn.

## A.   Motion to Suppress Based on the DEA's Warrantless GPS Surveillance

Berry argues that both attachment of the GPS tracker and that the seventy-three day surveillance of his vehicle that followed were "objectively unreasonable" under the Fourth Amendment. Because we are convinced that the DEA agents in this case relied in good faith on controlling Fifth Circuit precedent when they attached the GPS device and tracked Berry's whereabouts, we believe the district court properly denied Berry's motion to suppress on these grounds.[2]

In *Davis v. United States*, 564 U.S. 229 (2011), the Supreme Court held that "evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule" even if that precedent is later overturned. *Id.* at 241. In this case, the Government argues that the agents who installed and monitored the GPS tracker affixed to Berry's vehicle relied on this Court's opinion in *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981) (en banc), which held that the warrantless attachment and monitoring of a beeper on a defendant's car was justified as long as there was

---

[2] In his brief, Berry argues that the Supreme Court's opinion in *United States v. Jones* should apply to our analysis. In *Jones*, the Supreme Court held that the attachment of a GPS tracker to a vehicle and the use of the tracker to monitor the vehicle's movements constituted a search under the Fourth Amendment. 132 S. Ct. at 949. However, because *Jones* was decided in 2012, after the GPS tracker was installed on Berry's car, *see Jones*, 132 S. Ct. at 945, the opinion does not control our analysis.

reasonable suspicion that the defendant was engaging in criminal activity, 645 F.2d at 255, 257. In *Andres*,[3] this Court applied *Davis*, holding that prior to *Jones* "it was objectively reasonable for agents operating within the Fifth Circuit to believe that warrantless GPS tracking was permissible under [*Michael*]." 703 F.3d at 834–35.

Thus, under *Andres*, the actions of the DEA agents in this case were certainly not "objectively unreasonable." Berry's attempt to distinguish *Andres* by arguing that it only addressed the placement, but not monitoring, of a GPS tracker is unavailing. Not only did we discuss *GPS tracking* as a whole in *Andres*, but we also specifically endorsed reliance on *Michael*, which dealt with both the placement *and* monitoring of tracking device. *Id.* at 832, 834–35; *see also Michael*, 645 F.2d at 258–59 ("We hold that *the installation and monitoring* of the beeper involved no violation of Michael's fourth amendment rights." (emphasis added)). Although Berry also attempts to distinguish *Andres* on the basis of the total time the defendant's movements in that case were monitored, duration did not play a role in this Court's decision to find warrantless monitoring of the defendant's whereabouts permissible, and we do not consider the duration of GPS monitoring now. *See Andres*, 703 F.3d at 830–31 (tracking for approximately four days). An agent relying on binding Fifth Circuit precedent at the time the GPS tracker was placed on Berry's vehicle and monitored would thus have had no reason to believe that a warrant was required either to place the tracker or to monitor it for a certain duration.

In the alternative, Berry argues that the DEA agents here were not acting in good faith when they installed the GPS tracker on Berry's car without a warrant because this purportedly violated DEA policy. At a suppression

---

[3] Although the claim in *Andres* was reviewed for plain error, it was reviewed on the first prong of that inquiry and therefore dealt with the same question presented by this case—whether a Fourth Amendment violation even occurred. *See Andres*, 703 F.3d at 834–35.

hearing, DEA agent Kenneth Solek, Jr. testified that under DEA policy a vehicle could be monitored when it was in a "public thoroughfare[]," as long as an Assistant U.S. Attorney had approved the warrantless surveillance. While Agent Solek admitted that "to [his] knowledge" neither he nor any other agent ever contacted the local U.S. Attorney's Office for approval of warrantless GPS monitoring, he also stated that he believed there was "an understanding" with the local U.S. Attorney's Office that approval was not required before placing and monitoring a GPS tracker without a warrant. Based on this testimony, the district court found that Agent Solek and his colleagues "believed in good faith that their conduct was lawful" and that this belief was "objectively reasonable" under *Davis*. Because we review this factual determination for clear error, *Cooke*, 674 F.3d at 493, and because no case law supports a finding of clear error in this case, we do not agree with Berry. Thus, we affirm the district court's denial of Berry's motion to suppress based on the attachment and monitoring of the GPS tracking device.

**B.     Motion to Suppress Based on the Extended Traffic Stop**

In his second motion to suppress, Berry argues that notwithstanding the GPS tracking, the traffic stop conducted by LSP troopers violated his Fourth Amendment rights. Berry argues the following: (1) the length of the traffic stop was impermissibly extended after his background check came back clean; and (2) even if there was reasonable suspicion to initially extend the stop, the probable cause created by Niko's initial alert "dissipated" when nothing was discovered after a forty-five minute search of the car. Because we believe that the stop was not impermissibly extended and that probable cause continued to exist throughout the entire course of the stop, we find that the district court properly denied Berry's motion to suppress on these grounds.

This Court analyzes traffic stops under the Fourth Amendment using the two-step inquiry adopted in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States*

*v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013). "First, we determine whether stopping the vehicle was initially justified by reasonable suspicion." *Id.* "Second, we evaluate whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *Id.* "An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).

### 1. Extension of the Stop

Berry first argues the stop was impermissibly extended when his background check came back clean.[4] In this situation, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). For instance,"[i]f all computer checks come back clean, then as a general matter reasonable suspicion disappears, and there is no legitimate reason for extending the stop." *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006). Therefore, without additional reasonable suspicion, "waiting for or conducting a dog sniff cannot prolong a stop justified by only a traffic violation beyond the amount of time reasonably required to complete the mission of issuing a traffic ticket and attending to related safety concerns." *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016) ("A dog sniff is not part of the mission of issuing a traffic ticket.").[5] A stop may only be further extended if

---

[4] Berry does not contest that Trooper St. Romain permissibly stopped him under reasonable suspicion of a traffic violation.

[5] We cite unpublished opinions in this decision not because they are precedential, which they are not, *see* 5TH CIR. R. 47.5.4, but to show the consistency of our dispositions.

law enforcement "develops reasonable suspicion of additional criminal activity in the meantime." *Pack*, 612 F.3d at 350.

Reasonable suspicion requires an examination of the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 38–39 (1996). "We traditionally give due deference to the experience of officers . . . in identifying a number of factors that, although insufficient by themselves to suggest illegal activity, taken together are indicia of certain types of illicit acts." *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003). "The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27).

We agree with the Government that Berry's behavior during the stop along with the briefing LSP troopers received from the DEA were enough to support reasonable suspicion to extend the traffic stop. This Court has previously determined that inconsistent and untruthful statements can be a factor in developing reasonable suspicion during a traffic stop, *see, e.g.*, *Andres*, 703 F.3d at 834, as can an individual's nervous behavior during that stop, *see, e.g.*, *United States v. Wallstrum*, 515 F. App'x 343, 347, 350 (5th Cir. 2013) (per curiam); *United States v. Henton*, 600 F. App'x 263, 264 (5th Cir. 2015) (per curiam). Both were present here. First, at a suppression hearing, Trooper St. Romain testified he believed Berry was lying during the stop. Trooper St. Romain concluded Berry's story that he was travelling to Lake Charles to do construction work for his aunt was implausible not only because of the briefing he had received from the DEA, which contradicted this statement, but also because Berry was wearing clothes not suitable for construction work. Trooper St. Romain also testified that he found it odd that Berry had not called his aunt prior to travelling such a long distance. Second, Trooper St. Romain testified

that Berry appeared nervous during the traffic stop because he "was shaking when he handed [over] his information" and "wouldn't make eye contact."[6]

We have also determined that reasonable suspicion can be developed from the "collective knowledge" of various law enforcement officers or agencies. *See, e.g.*, *United States v. Carmenate*, 344 F. App'x 941, 942 (5th Cir. 2009) (per curiam); *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759–60 (5th Cir. 1999). Here, the Government argues that the information Trooper St. Romain received from the DEA about Berry's suspected narcotics trafficking contributed to his decision to extend the traffic stop. Because this information related to a "long-standing, ongoing pattern of criminal activity," it had not gone stale as Berry claims, *see United States v. Craig*, 861 F.2d 818, 822 (5th Cir. 1988) (quoting *Unites States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984)), and was thus another factor that properly contributed to Trooper St. Romain's determination that reasonable suspicion to extend the stop existed. In reviewing the totality of the circumstances, and particularly in light of the briefing Trooper St. Romain received from the DEA, we conclude that Trooper St. Romain had reasonable suspicion of additional criminal activity—suspected narcotics trafficking—that permitted him to extend the stop beyond mere investigation of Berry's traffic violation.

**2. Dissipation of Probable Cause**

In the alternative, Berry contends that even assuming Trooper St. Romain had reasonable suspicion to extend the stop, the probable cause created by Niko's initial alert dissipated when nothing was discovered after a

---

[6] Although the latter behavior is not clearly presented by the dash cam video, the district court implicitly found Trooper St. Romain's testimony credible and Berry has not demonstrated that this credibility finding rises to the level of clear error, *see Cooke*, 674 F.3d at 493.

forty-five minute search of the car.[7] As a result, Berry argues that redeployment of Niko and the subsequent search of the truck's interior violated his Fourth Amendment rights. We disagree.

"A warrantless search is permissible under the automobile exception if (1) the officer conducting the search had 'probable cause to believe that the vehicle in question contain[ed] property that the government may properly seize'; and (2) exigent circumstances justified the search." *United States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005) (alteration in original) (quoting *United States v. Reyes*, 792 F.2d 536, 538 (5th Cir. 1986)); *see also United States v. Machuca-Barrera*, 261 F.3d 425, 432 (5th Cir. 2001) ("To determine the lawfulness of a stop, we ask whether the seizure exceeded its permissible duration."). Driving along an interstate highway provides the "requisite exigent circumstances." *Castelo*, 415 F.3d at 412. But officers "may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

Although Berry argues that the length of the stop was unreasonable because the first forty-five minutes of the search did not recover evidence of wrongdoing, he fails to present any cases to support a finding that the length of a search alone would dissipate probable cause. In fact, this Court has rejected that very argument at least once before. *See, e.g.*, *United States v. Hernandez*, 518 F. App'x 270 (5th Cir. 2013) (per curiam). In *Hernandez*, the defendant argued that probable cause dissipated after officers searched his vehicle for approximately three hours. *Id.* at 271. In rejecting that argument, this Court noted that the defendant cited no "case law suggesting that an unsuccessful three- to four-hour search would itself dissipate existing probable

---

[7] Berry does not dispute that Trooper St. Romain had probable cause to search the vehicle after Niko's initial alerts.

cause" and held there was sufficient probable cause to continue searching the vehicle based on a "wiretap investigation, [defendant] and his passenger's answers to police questions, and the two dog alerts." *Id.* Likewise, here the length of the search alone did not dissipate probable cause where probable cause was based on a combination of the following: (1) a briefing from the DEA; (2) Berry's suspicious behavior and answers to the troopers' questions; and (3) Niko's initial alerts and indications around the car.

Moreover, "[i]n assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Under the circumstances present in this case, the officers involved acted diligently and do not appear to have extended the search any longer than was necessary. There were at most only two officers searching the vehicle at any time, and the majority of the first forty-five minutes of the search were spent meticulously going through the plethora of objects in the truck bed.[8] Given the nature of the object for which officers were searching—illegal narcotics—and the fact that probable cause permits officers to search "every part of a vehicle which may conceal the object of the search," *United States v. Zucco*, 71 F.3d 188, 191–92 (5th Cir. 1995), probable cause did not dissipate in the first forty-five minutes. Thus, extension of the search past that period did not violate Berry's Fourth Amendment rights, and we conclude the district court properly denied Berry's motion to suppress on these grounds.

---

[8] According to the Government, this included "a wheel barrow, fuel canister, push lawn mower, hand-held lawn mower, two rakes, an industrial-sized broom, a leaf blower with a bag, a large aluminum truck tool box, a generator, and other objects."

No. 15-30196

## III. CONCLUSION

For the reasons stated above, the district court's denial of both motions to suppress is AFFIRMED.