# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2025

Lyle W. Cayce
Clerk

No. 24-30233

—————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Malcolm J. Jackson,

*Defendant—Appellant*.

—————————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CR-152-4

—————————————————————

Before Southwick, Oldham, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Malcom J. Jackson appeals the denial of his motions to suppress evidence seized from his vehicle and home. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30233

## I

On March 12, 2019, Brandi Jackson's sister called the Iberville Parish Sheriff's Office and reported that Jackson, Brandi's husband, had beaten Brandi at their home in Plaquemine, Louisiana, and that "she can't breathe."

Sergeant Randy Vinson and Detective Jeremy Sanchez arrived at the Jacksons' home first. They could hear screaming from inside the home, and a bystander told them that "he" was beating her. The officers approached the open front door, where they could see Jackson and Brandi arguing. The couple spotted Vinson and told him to leave. Both officers then made "a continuous movement . . . up the steps" and entered the home, where they observed a knife and scissors on the kitchen counter. They attempted to separate the couple, but because neither Brandi nor Jackson would comply with directions, they placed them both into separate police vehicles.

Narcotics detectives Zane Hebert and Nicholas Engolio arrived at the home soon after. Vinson informed the detectives that he noticed the smell of marijuana coming from the home and observed digital scales with white residue and a torn plastic baggy on the kitchen counter. Vinson was unsure if he saw these items before or after he entered the house, but he recalled seeing the countertop from right outside the open doorway. Hebert and Engolio confirmed that they could also see the drug paraphernalia from right outside the doorway and smell marijuana. Hebert, Engolio, and other narcotics officers conducted a protective sweep of the house that lasted "a minute, maybe two" to ensure Jackson's home was empty. The officers then arrested Jackson and Brandi for disturbing the peace.

In a subsequent application for a search warrant, Hebert stated:

Upon arrival we met with Sgt. Randy Vinson who was at the entry door of the residence. At which time I detected a strong odor of marijuana emitting from the open entry door. Also I

2

No. 24-30233

> observed in plain view on the kitchen counter two digital scales and [a] box of plastic bags with a plastic bag hanging out of the box with the corner torn off, which in my experience is commonly used in the distribution of narcotics.
>
> Upon securing the scene I spoke with Sgt. Vinson who stated that Brandi Jackson and Malcolm Jackson stated multiple times for deputies to get out of the residence.

The warrant was issued, and the officers searched Jackson's home where they found, relevant to this appeal, cocaine, marijuana, digital scales, baggies, and a firearm.

B

Jackson had been under federal wiretap order by the FBI for his alleged participation in a drug-related criminal conspiracy since December 2018. Based on a wire intercept, the FBI learned on April 26, 2019, that Jackson would be going to Baton Rouge to acquire cocaine. The FBI informed the local authorities that Jackson was traveling back to Plaquemine with drugs in his vehicle.

Officer Matthew Dixon from the Iberville Parish Sheriff's Office stopped Jackson's truck because the taillights were out. When Dixon approached the truck, he could smell marijuana. He asked Jackson about the smell, and Jackson said he "smoked a blunt earlier." Dixon instructed Jackson to exit his truck and stand on the side of the road. After obtaining Jackson's consent, Dixon searched the truck but found nothing. Dixon contacted two other officers—Daniel Falcon and Michael Moore—who arrived several minutes later and conducted a second search, with Jackson's consent. After Moore found a bag of cocaine hidden in a boot in Jackson's truck, Jackson was arrested. The traffic stop lasted about 45 minutes.

3

No. 24-30233

C

Jackson was charged with conspiracy to traffic drugs, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a convicted felon. He filed separate motions to suppress the evidence seized from his home and his truck. The court conducted a hearing for each motion.

Five witnesses testified at hearing on the motion to suppress the evidence seized from Jackson's residence—Vinson, Sanchez, Hebert, Engolio, and Brandi. The Government argued that the first warrantless search was justified due to exigent circumstances—domestic violence, and that the second warrantless search was merely a protective sweep during which no evidence was obtained. It also argued that the search warrant was supported by probable cause because (1) the electric scales and plastic baggies were in plain sight, and (2) the officers could smell marijuana outside the doorway and the smell permeated the entire house. Jackson responded that the first warrantless entry of his home and the basis for obtaining the warrant were based on a lie, as it was impossible for the officers to see the drug paraphernalia on the counter from right outside the doorway. He also argued that the surrounding circumstances were not enough to constitute exigent circumstances.

Three witnesses testified at the hearing on the motion to suppress the evidence seized from Jackson's truck—Dixon, Moore, and FBI Special Agent Josh Badasch, who did not participate in the traffic stop but was 100 yards away. Jackson argued that the extended stop was not supported by probable cause and that his consent was tainted by the illegal stop.

On May 1, 2023, the district court denied both motions to suppress in the same order. It found that the first warrantless search of the home was justified based on exigent circumstances, and that the smell of marijuana was

4

enough to establish probable cause for the search warrant. As for the vehicle search, the district court concluded that there was reasonable suspicion to initiate the traffic stop, and that Jackson consented to the searches. It also found that the smell of marijuana coming from Jackson's truck independently supported probable cause to search it.

Jackson pleaded guilty to two of the three counts of the indictment under a plea agreement in which he reserved the right to appeal the denial of his motions to suppress. The court sentenced Jackson to 94 months imprisonment and three years of supervised release.[1]

Jackson appeals the denial of both his motions to suppress evidence.

## II

When examining a district court's denial of a motion to suppress evidence, we review factual findings for clear error and conclusions of law de novo. *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009). Legal conclusions include the ultimate constitutionality of law enforcement action and determinations about the existence of probable cause. *United States v. Keller*, 123 F.4th 264, 267 (5th Cir. 2024); *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). "Factual findings are clearly erroneous only if a review of the record leaves this [c]ourt with a definite and firm conviction that a mistake has been committed." *United States v. Montemayor*, 55 F.4th 1003, 1008 (5th Cir. 2022) (quoting *Hearn*, 563 F.3d at 101). "The clearly erroneous standard is particularly deferential where, as here, 'denial of a suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses.'" *Robinson*, 741 F.3d at 594 (quoting *United States v. Gibbs,* 421 F.3d 352, 357 (5th Cir.2005)

---

[1] On April 17, 2025, Jackson received an Executive Grant of Clemency by the President that reduced his prison time but did not affect his term of supervised release.

(citation modified)). We must view all evidence in the light most favorable to the prevailing party—here, the Government—unless this view is "inconsistent with the trial court's findings or is clearly erroneous considering the evidence as a whole." *United States v. Tovar*, 719 F.3d 376, 384–85 (5th Cir. 2013) (quoting *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010)).

"Unpreserved suppression arguments are reviewed for plain error." *Keller*, 123 F.4th at 267. To show plain error, a defendant must demonstrate a forfeited error that is clear or obvious and that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he does so, a court has the discretion to correct the error but should do so only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation modified).

## III

Jackson contends that the district court erred by failing to exclude the evidence obtained from his home.

## A

Jackson first contends that the district court erroneously found that exigent circumstances justified the officers' warrantless entries into his home. We disagree.

The Fourth Amendment protects individuals "against unreasonable search and seizures." U.S. Const. amend. IV. The Supreme Court has said it is a "basic principle" that searches and seizures inside a home without a warrant are presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). This presumption is subject to certain exceptions, including when "the exigencies of the situation" make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the

No. 24-30233

Fourth Amendment. *Id.* at 460 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). This "emergency aid exception" "requires only 'an objectively reasonable basis for believing,' . . . that 'a person within [the house] is in need of immediate aid[.]'" *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (citations omitted).

Here, Brandi's sister called 911 to report that Jackson was beating Brandi and that she could not breathe. When officers arrived at the couple's home, they could hear screaming, and a bystander told them that "he" was beating her. Because the door was open, both Vinson and Sanchez could also see the couple actively arguing. "[D]omestic disputes often involve high emotions and can quickly escalate to violence," even from a "situation [that is] seemingly calm at [officers'] arrival." *United States v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010). Under the circumstances of this case, the officers had "an objectively reasonable basis for believing" that Brandi was in danger and needed immediate aid, justifying their initial warrantless entry under the "emergency aid exception." *Fisher*, 558 U.S. at 47; *see also Ceasar v. City of Eunice*, 642 F. App'x 387, 389 (5th Cir. 2016) (unpublished) (finding officers' warrantless entry justified because they received a "credible report of domestic violence" describing how the defendant had hit someone and was attempting to fight his girlfriend).[2]

_____

[2] "Even under exigent circumstances, law enforcement must also show 'probable cause . . . that an illegal act is taking place' before entering without a warrant." *United States v. Turner*, 125 F.4th 693, 708 (5th Cir. 2025) (citing *United States v. Newman*, 472 F.3d 233, 236 (5th Cir. 2006)). This requirement asks whether under the "totality of the circumstances," it is a "fair probability" that evidence of a crime will be found in a particular place. *Newman*, 472 F.3d at 237 (quoting *Illinois v. Gates*, 462 U.S. 213, 238

Relying on *Stuart*, Jackson argues that more than just a loud argument is required to support a finding of exigent circumstances. He notes that the officers did not witness a physical altercation and could see that Brandi was not injured. Jackson also argues that before entering, the officers should have given him and Brandi an opportunity to stop arguing and voluntarily separate.

In *Stuart*, officers responding to a complaint about a loud party at 3 a.m. could hear a loud and tumultuous altercation occurring inside the house. 547 U.S. at 406. After seeing a juvenile punch an adult, who then spat up blood, they entered the house. *Id.* The Supreme Court concluded that the officers were reasonable in believing that "the injured adult might need help" and that "the violence in the [home] was just beginning," so their warrantless entry was justified. *Id.* Notably, it found that "[n]othing in the Fourth Amendment required [the officers] to wait until another blow rendered someone 'unconscious' or 'semi-conscious' or worse before entering." *Id.*; *see also Fisher*, 558 U.S. at 49 ("Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." (citation modified)).

Jackson also argues that no exigency existed because his conduct at worst only amounted to a misdemeanor complaint, citing *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984), which held "that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." The Supreme Court has made clear, however, that the "emergency aid exception" does not depend on "the seriousness of any crime [officers] are investigating when the emergency arises." *Fisher*, 558 U.S. at 47; *see also Stuart*, 547 U.S. at 405

---

(1983)). Neither party contends that the officers lacked probable cause, and we agree that it existed here.

No. 24-30233

(rejecting a similar argument based on *Welsh* because the officers were confronted with "ongoing violence occurring within the home").

Jackson has not shown that the district court erred in finding that exigent circumstances justified the officers' warrantless entry into his home.

B

Jackson next contends that "[t]he search warrant was tainted by a false statement"—that Hebert could see the digital scales from the doorway. He argues that the district court did not make a factual finding that the officers saw the scales from the doorway and appeared to concede that they could have lied.

"Under [*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)], a search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017).

Hebert's affidavit does not specifically state that he saw the scales from the doorway, so Jackson has failed to show that the affidavit contains the statement he alleges is false. *See id.* (concluding a statement is not false under *Franks* because "it reasonably could be read as truthful"); *see also United States v. Hare*, 772 F.2d 139, 141 (5th Cir. 1985) ("A statement in a warrant affidavit is not false merely because it summarized or characterizes the facts in a particular way.").[3]

---

[3] The Government contends that "there is no dispute that []Hebert *did* see the scales and baggies either from the porch or during the protective sweep." Jackson responds that the protective sweep was an illegal entry unjustified by the circumstances, however.

No. 24-30233

\*      \*      \*

The district court did not err in denying the motion to suppress the evidence seized from Jackson's home.

## IV

Jackson also appeals the denial of the motion to suppress evidence seized from his vehicle. He contends that his prolonged detention constituted an illegal seizure that vitiated his consent.

A traffic stop constitutes a seizure under the Fourth Amendment, and its legality is analyzed under the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). "Police may detain an individual if the officer has a reasonable suspicion based on specific and particularized facts that the person is involved in criminal activity." *United States v. Massi*, 761 F.3d 512, 521 (5th Cir. 2014). If a "detention continued beyond the bounds permitted by a finding of reasonable suspicion under *Terry,* it 'must be accompanied by probable cause' to believe that [the individual] had committed a criminal offense." *Id.* at 522.

As noted, Dixon testified that he smelled marijuana when he approached Jackson's truck, and when asked about the smell, Jackson admitted he had used marijuana earlier that day. Moore also testified that the smell of marijuana came from the truck, and the district court found both officers to be "highly credible." This is enough to meet the probable cause

---

Because the parties agree that the drug paraphernalia was in plain view to officers walking into the residence, we need only determine whether the initial entrance was valid. *See Turner*, 125 F.4th at 709 (5th Cir. 2025) (explaining that even assuming the validity of the defendant's argument that the officers were outside the scope of a lawful protective sweep, their conduct did not result in the discovery of the evidence and was therefore irrelevant for the motion to suppress). As noted, law enforcement lawfully entered Jackson's home and arrested him and Brandi.

threshold. *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc).

Jackson did not raise his argument that probable cause dissipated due to the duration of the stop before the district court, so we review for plain error. *Keller*, 123 F.4th at 267. Jackson has not even attempted to satisfy the plain error standard, so he has failed to meet his "burden to demonstrate that all four prongs of plain error review are met." *United States v. Lavalais*, 960 F.3d 180, 186 (5th Cir. 2020). And we have previously found, albeit in unpublished cases, that the length of a search alone does not dissipate probable cause. *See United States v. Berry*, 664 F. App'x 413, 420 (5th Cir. 2016) (forty-five-minute search); *United States v. Hernandez*, 518 F. App'x 270, 271 (5th Cir. 2013) (three- to four-hour search).

The district court did not err in denying Jackson's motion to suppress the evidence seized from his truck.[4]

V

We **AFFIRM** the district court's denial of Jackson's motions to suppress.

---

[4] Because there was sufficient probable cause to search Jackson's vehicle, we need not address his arguments regarding consent. *See United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (finding that probable cause and consent can independently support a warrantless vehicle search).