# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 26, 2011

No. 10-30716

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

TRAVIS C. DAVIS,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CR-275-1

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Travis Davis ("Davis") appeals his conviction on five charges involving drugs and firearms, arguing that the prosecution should have been required to disclose the identity of a confidential informant ("CI") who provided law enforcement with information leading to a search warrant that, in turn, led to the evidence offered against him. We AFFIRM Davis's conviction and sentence, except that we REMAND to the district court to correct a sentencing error resulting in Davis's sentence for one count exceeding the statutory maximum.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30716

## I.  FACTS

Davis was the target of a narcotics-related investigation run by the DeSoto Parish Sheriff's Office ("DPSO") for a number of years.  On August 5, 2009, Davis was arrested in his home on domestic violence charges.  Detective Keith Banta ("Banta") of the DPSO, who was a part of the narcotics investigation, determined that the time following Davis's arrest would be an ideal time to execute a search warrant due to the potential for a greater yield. He obtained a search warrant to search Davis's house for drugs and other items relating to the drug trade.  Banta's probable cause to search the house was based largely on the testimony of a CI that claimed to have seen a large amount of crack cocaine cookies in a black plastic trash bag inside the residence within the twenty-four hours prior to the execution of the search warrant.  Banta's affidavit in support of his search warrant stated that the CI had been giving him information about Davis's drug activities for about six months prior to the arrest and that the CI's prior leads had been independently verified.

Inside Davis's house, Banta and other officers found a black plastic trash bag as described by the CI.  Inside the trash bag were, among other things, 10 bags of crack cocaine, twenty-eight dosage units of ecstasy, a .40 caliber Springfield Armory XD with a loaded magazine, scales, and a white plastic bag containing bags of crack cocaine. Additionally, DPSO uncovered a small amount of marijuana in the defendant's top dresser drawer and a box of American Eagle .40-caliber ammunition.

After the search of his home, Davis was indicted on two firearms charges, two drug charges, and a claim for forfeiture of certain items seized.  Prior to trial, Davis filed a motion to suppress the evidence and a motion to disclose the identity of the CI. The magistrate judge issued a report and recommendation to the district court recommending that Davis's motion to suppress be denied.  The report also acknowledged Davis's motion to disclose the identity of the CI and

No. 10-30716

stated that disclosure was not merited. The district court adopted the magistrate judge's report as to Davis's motion to suppress, but did not explicitly address Davis's motion to disclose. At trial, Davis's counsel cross-examined Banta and twice asked about information pertaining to the CI; both times the court ended the line of questioning on the grounds that it would tend to reveal the CI's identity. Following trial, the jury convicted Davis on all counts.

At sentencing, Davis objected to the sentencing calculation of the presentence investigation report ("PSR") due to the alleged sentencing disparity between crack cocaine and powder cocaine and his criminal history. The court overruled the objections and adopted the PSR. The PSR established that Davis's guidelines range for Counts One, Two, and Three was 292 to 365 months. However, the PSR noted that Davis's sentence as to Count One could not exceed ten years, the statutory maximum for that offense. On the first three counts, the district court sentenced Davis to 300 months, to run concurrently; on Count Four, the court ordered that Davis serve sixty months to run consecutively with the other terms. The court noted that it chose the term of 300 months based on Davis's "personal history, prior criminal record, and considerations of [18 U.S.C. §] 3553." Davis timely appealed.

## II. DISCUSSION

### A. Disclosure of the Confidential Informant

Davis argues that the district court erred by not requiring the prosecution to disclose the identity of the confidential informant who told Banta about the drugs in Davis's house, or, in the alternative, by not conducting an *in camera* hearing to determine the source of the CI's information and whether the CI's testimony was inconsistent with the testimony of witnesses establishing that he was not at home for approximately nine hours during the twenty-four hour

No. 10-30716

period prior to the search of his home.[1] Davis argues that the CI may have planted the drugs in his house.

We review the district court's decision not to disclose the identity of a confidential informant for an abuse of discretion. *United States v. Sanchez*, 988 F.2d 1384, 1391 (5th Cir. 1993). "The purpose of the [informer's] privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61.

In weighing the government's interest in confidentiality against the defendant's interest in disclosure, we have established a three-pronged test to determine when disclosure is mandated. *United States v. Cooper*, 949 F.2d 737, 749 (5th Cir. 1991). Under this test, we examine: (1) the level of the informant's participation in the alleged criminal activity; (2) the helpfulness of disclosure to any asserted defense; and (3) the government's interest in nondisclosure (the "*Roviaro* factors"). *See Roviaro*, 353 U.S. at 62–65; *United States v. Diaz*, 655 F.2d 580, 587-89 (5th Cir. 1981).

Davis argues that because the district court did not conduct an *in camera* hearing, the court cannot properly weigh the first two *Roviaro* factors. However, neither an *in camera* review nor an "on-the-record" *Roviaro* analysis is required in every instance involving disclosure of a CI's identity. *See Diaz*, 655 F.2d at

---

[1] Notably, Davis's arrest for domestic violence occurred at the same house in which the drugs were found, establishing that he was at the house for at least some of the period in question.

588 ("We do not think that it was necessary for the district court to interview the informant in camera for we conclude that the informant's testimony could not have been significantly helpful to the appellant's defense."); *United States v. Hernandez-Vela*, 533 F.2d 211, 213 (5th Cir. 1976) ("[A]n *appellant* must develop such factors on the record to support an assertion of such error.")(emphasis added); *see also United States v. Alexander*, 559 F.2d 1339, 1344 (5th Cir. 1977) ("We refuse to adopt a rule requiring a district court to hold an *in camera* hearing whenever the identity of an informant is requested."); *United States v. Toombs*, 497 F.2d 88, 90 (5th Cir. 1974) (affirming a district court's bench ruling that the defendant's motion for disclosure was "not . . . sufficient to require the Court to grant the motion."). Furthermore, Davis's interest in the disclosure is limited by the fact that the CI's testimony was only used to establish probable cause to search Davis's house and was not introduced by the Government at trial. *See United States v. Jackson*, 918 F.2d 236, 240 (5th Cir. 1990) ("[T]he defendant's interest in disclosure at the suppression state is less than at trial.").[2]

With these principles in mind, we turn to the *Roviaro* factors. The first factor, the CI's involvement in the crime, weighs in favor of nondisclosure. "The more active the participation, the greater the need for identification." *United*

---

[2] At oral argument, Davis argued that this lesser liberty interest was not applicable because he is not challenging the DPSO's reliance on the CI to establish probable cause, but rather requesting disclosure so that he could call the CI as a defense witness at trial. We reject this argument. Davis's only stated reason for requesting disclosure of the CI's identity is to impeach his credibility as it pertains to the discovery of the drugs in Davis's house. Davis's interest in disclosure is not increased by the fact that Davis would prefer to impeach the CI's testimony at trial rather than at a suppression hearing. Similarly, nothing in the disposition of this case presents other legal grounds upon which to challenge the nondisclosure of the CI's identity. Because the CI was not called as a witness nor was his testimony used at Davis's trial, Davis had no right to disclosure under the Jencks Act. *See* 18 U.S.C. § 1350 (requiring disclosure after use of testimony at trial). Similarly, there is no indication that the CI's testimony would be exculpatory, which would require disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). We therefore conduct the balancing analysis under the lesser interest involved where a confidential informant's testimony only provides probable cause for a search or seizure.

*States v. Ayala*, 643 F.2d 244, 246 (5th Cir. 1981). This factor does not weigh in favor of disclosure where an informant was only a tipster, or when his "level of involvement in the criminal activity is that of minimal participation." *Diaz*, 655 F.2d at 588. Here, the only evidence that the informant had any involvement in the criminal activity is the Government's acknowledgment that the CI "had minimal participation in the alleged criminal activity." Davis has pointed to no evidence in the record that suggests that the CI's involvement was more than minimal, so this factor does not weigh in favor of disclosure.

The second factor, the helpfulness of disclosure to any asserted defense, also weighs in favor of nondisclosure. Davis's only asserted defense at trial was that he was not at home for "most of" the twenty-four hour period before he was arrested, the period which the CI testified to having seen the drugs in Davis's home. Although Davis claims that the CI stated that Davis received the drugs in this twenty-four hour period, Officer Banta's affidavit in support of his request for a search warrant states instead that the drugs had arrived in the previous forty-eight hours. Davis makes no attempt to account for his whereabouts during the forty-eight hour period before his arrest, and even for the twenty-four hours immediately preceding the arrest, he has no information about his location for much of that time period.

Davis's stated reason for wanting to call the CI as a witness is to test his credibility and to determine whether the CI planted the drugs in Davis's home. Davis admits that he has no evidence that the CI placed the drugs in his home, therefore disclosure is not warranted on Davis's theory that the CI may have planted the drugs. *See United States v. Orozco*, 982 F.2d 152, 155 (5th Cir. 1993) ("Mere conjecture or supposition about the possible relevancy of the [CI's] testimony is insufficient to warrant disclosure."); *see also Toombs*, 497 F.2d at 93 n.5 ("Much more than speculation is required. There must be a compelling reason for the disclosure."). Similarly, because the CI's information only went

to establishing probable cause for searching Davis's home, his credibility cannot be put at issue. This is, at least in part, because "the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told." *McCray v. Illinois*, 386 U.S. 300, 307 (1967).

In sharp contrast to the lack of evidence that the CI planted the drugs in Davis's home, there is substantial evidence in the record that the drugs found in Davis's home belonged to Davis. In a phone call that Davis made to his wife while incarcerated, he expressed relief that the bust had occurred when it did, because if the police had made the arrest a little later "they would have really had something." At trial, Felicia Hendrix, Davis's cousin, testified that Davis supplied her with cocaine in return for bringing him buyers. Furthermore, she would regularly make trips to receive ecstasy and cocaine from Davis's suppliers and help Davis cook the cocaine into crack. Hendrix also testified that Davis sometimes received guns in payment for drugs. The jury also heard evidence that Davis's house had surveillance equipment to monitor any approaching vehicles. Finally, Davis had a previous felony conviction for possession of crack cocaine and marijuana. Thus, assuming arguendo that Davis were to prove that he was not in the home with the cocaine at any point, the evidence would still support a conviction for constructive possession of the drugs and firearms, and the possibility that the CI would testify that he planted the drugs is too attenuated to constitute an essential defense. *See United States v. Hare*, 589 F.2d 242, 243 (5th Cir. 1979) ("Hare's theory is that, if revealed, the informer might testify that Hare . . . did not know what was in the sack. . . . [T]his possibility (if it can be called a possibility at all) is simply too attenuated to be considered a necessary part of Hare's defense.").

Because the first two factors do not establish a case for disclosure, we need not consider the third factor. *See Cooper*, 949 F.2d at 749-50. We do note,

however, that the Government presented evidence supporting both the CI's continued usefulness and the potential danger of disclosing the CI's identity.

B. Sentencing

Count One of the indictment charged Davis with violation of 18 U.S.C. § 922(g)(1), possession of a firearm by a person convicted of a felony. The maximum sentence that may be imposed for a violation of the statute is ten years. 18 U.S.C. § 924(a)(2). After his conviction, the district court sentenced Davis to "a term of 300 months as to Count 1, 2, and 3, all to be served concurrently." Davis thus challenges his sentence for Count One as being above the statutory maximum.

The Government concedes that the sentence on Count One was erroneous, but argues that the sentence was simply a clerical error which can be remedied on remand. We agree and remand to the district court for correction of the sentence as to Count One. *See* FED. R. CRIM. P. 36; *United States v. Jones*, 28 F.3d 1574, 1582 (11th Cir. 1994) (remanding case for resentencing because the Government conceded error and the error was simple to correct), *vacated on other grounds*, 516 U.S. 1022 (1995).

Davis also argues that his sentence is substantively unreasonable due to the sentencing disparity between crack cocaine and powder cocaine, but concedes that this issue is foreclosed from consideration by our decision in *United States v. Martin*, 596 F.3d 284, 285-86 (5th Cir.), *cert. denied*, 130 S. Ct. 3480 (2010). We therefore affirm the substantive reasonableness of Davis's sentence.

III. CONCLUSION

For the foregoing reasons, we AFFIRM Davis's conviction and sentence, except that we REMAND to the district court for correction of his sentence under Count One.