# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50301

United States Court of Appeals
Fifth Circuit

**FILED**

April 25, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

ADOLFO ORTEGA,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, JOLLY, and PRADO, Circuit Judges.

KING, Circuit Judge:

Defendant–Appellant Adolfo Ortega pleaded guilty to charges of possession with intent to distribute 500 grams or more of cocaine and possession of a firearm in furtherance of a drug trafficking crime. On appeal, Ortega argues that the district court erred in denying his motion to compel disclosure of the identities of confidential informants and his motion to suppress. Ortega also argues that the factual basis of his guilty plea was insufficient to support the firearm conviction. Because additional fact findings related to the motion to suppress are necessary, we VACATE the convictions and sentences, and REMAND the case for further proceedings consistent with

No. 16-50301

this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Search Warrant

On April 19, 2013, San Antonio Police Officer Matthew Parkinson secured a state search warrant for the home of Defendant–Appellant Adolfo Ortega, who was suspected by Parkinson to be trafficking cocaine. The search warrant was supported by an affidavit signed by Parkinson. In his affidavit, Parkinson explained that he had received information from a confidential informant about Ortega's alleged cocaine possession:

> Affiant did on the 18th of April, 2013 receive information from a credible and reliable person who has on previous occasions given Affiant information regarding the trafficking and possession of controlled substances which has proven to be true and correct but whose identity cannot be revealed for security reasons.

> The said credible and reliable person stated that they did within the last 48 [hours] see a controlled substance, to wit Cocaine, in the possession of the aforesaid Defendant[] Ortega . . . inside the location at [the address for Ortega's house].

Parkinson also stated in his affidavit that surveillance of Ortega's house revealed that an unspecified number of individuals would occasionally arrive and enter Ortega's house for short periods of time or engage in a hand-to-hand transaction with someone from the house, and "[t]hese types of behaviors are consistent with the buying and selling of narcotics."

When Parkinson and other officers executed the search warrant, Ortega led the officers to a shed in his backyard, which contained more than 3,000 grams of cocaine. Ortega then led the officers to a closet in his house where two handguns were located, one on the top shelf and one in a jacket hanging in the closet. A weight scale, several baggies of cocaine, and a safe (which contained approximately $45,000 in cash) were also in the same closet as the handguns. Ortega was indicted for (1) possession with intent to distribute 500

2

No. 16-50301

grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

## B. Ortega's Motion to Suppress and Motion to Compel Disclosure

On March 27, 2015, Ortega filed two motions: (1) a motion to suppress and request for a *Franks* hearing, *see Franks v. Delaware*, 438 U.S. 154 (1978), and (2) a motion to compel disclosure of the identity of a confidential informant. In his motion to suppress, Ortega argued, *inter alia*, that he was entitled to a *Franks* hearing because Parkinson's affidavit contained the false statement that a confidential informant had seen cocaine in Ortega's possession and residence within the past 48 hours. With the motion, Ortega included his own affidavit stating that, besides himself, only his wife and his in-laws had entered his house during those 48 hours. In other words, Ortega argued that the confidential informant's tip must have been false because the confidential informant could not have seen cocaine inside his house during that time given that the confidential informant did not enter the house (assuming that neither his wife nor in-laws were the confidential informant). In his motion to compel disclosure, Ortega contended that the confidential informant's identity should be disclosed because the confidential informant's allegations were the sole support for the search warrant.[1] According to Ortega, "[s]ince [the confidential informant] is the sole participant in this case, his testimony and therefore access to him becomes paramount to [Ortega's] defense."

The district court referred Ortega's motions to a magistrate judge. On

---

[1] Although Ortega's motion references only a single confidential informant, during the subsequent evidentiary hearing, Parkinson testified about four different anonymous individuals who were involved with the investigation to varying degrees. Ortega's counsel made clear that the motion to compel disclosure applied to the identities of all four anonymous individuals. For consistency, we refer to these individuals as the parties referred to them in the district court and in their briefs (CI-1, CI-2, CI-3, and Person 4).

No. 16-50301

April 13, 2015, the magistrate judge held an evidentiary hearing on the motions.

### i. Testimony During the Hearing

During the hearing on Ortega's motions, Parkinson, Ortega, and Ortega's wife testified. Parkinson testified that he first learned about Ortega at the end of 2012 from a confidential informant (CI-1) who told Parkinson that Ortega was involved in distributing cocaine in San Antonio. After learning this information, Parkinson did not pursue further investigation of Ortega besides some limited research. In April 2013, however, a different source brought up a nickname for Ortega, and Parkinson decided to move forward with the investigation. Specifically, Detective Mario Jacinto, another detective in Parkinson's office, had a confidential informant (CI-2) who was familiar with Ortega's alleged drug trafficking activities. Parkinson identified CI-2 as the confidential informant referenced in his affidavit—*i.e.*, CI-2 had seen cocaine in Ortega's possession inside Ortega's house within the past 48 hours and had provided Parkinson with reliable information in the past. Parkinson further explained how CI-2 had seen Ortega in possession of cocaine: CI-2 had driven his friend (Person 4) to Ortega's house so that Person 4 could purchase cocaine, and when they arrived, Ortega emerged from his house carrying cocaine and engaged in a hand-to-hand sale with Person 4 while Person 4 and CI-2 remained in the car.[2]

Notably, Parkinson testified that he had not actually worked with CI-2 previously. Rather, CI-2 had worked with Jacinto, and Jacinto told Parkinson that CI-2 had proven to be very reliable in the past. Parkinson also testified that he did not actually speak with CI-2. Instead, CI-2 conversed with Jacinto

---

[2] There was also a third confidential informant (CI-3) who identified a photograph of Ortega and provided other information that was not used in the search warrant.

4

mostly in Spanish, a language that Parkinson does not understand, and Jacinto translated for Parkinson what CI-2 had said.[3]

Ortega denied during his testimony that any hand-to-hand drug transaction, such as the one described by CI-2, had occurred within 48 hours of the execution of the affidavit.  Ortega's wife further supported Ortega's account by testifying that she did not see any unknown individuals come to their house during the relevant timeframe.

### ii. The Magistrate Judge's Report and Recommendation

The magistrate judge recommended denying the motion to suppress. Relevant to this appeal, the magistrate judge recognized that Parkinson only had observed CI-2 speaking to Jacinto (mostly in Spanish) and that CI-2 had not actually been inside Ortega's house.  However, the magistrate judge noted that CI-2 had concluded that Ortega must have possessed the cocaine inside the house because Ortega emerged from the house and directly delivered the cocaine to Person 4 outside.  The magistrate judge thus found that, "although it is not as precise and definite as it could have been," the language in the affidavit "does appear to fairly fit the facts as they occurred."  The magistrate judge then said that she "makes a credibility finding and, simply put, does not accept defendant's version of events."  Put another way, the magistrate judge rejected Ortega's testimony that the drug transaction with Person 4 (as recounted by CI-2) did not occur.  The magistrate judge completed her analysis by stating that she "does not conclude the search warrant affidavit contains materially false information or declines to state probable cause."

The magistrate judge also recommended denying the motion to compel

---

[3] The magistrate judge described this conversation as the following: "As made clear at the April 13 hearing, Detective Parkinson indirectly received that information from CI-2; he testified that he observed another . . . officer interview CI-2 (apparently by watching through a window in an interview room) with the other officer and CI-2 speaking at times or entirely in Spanish."

disclosure. The magistrate judge highlighted how none of the four anonymous individuals (CI-1, CI-2, CI-3, or Person 4) had participated in the search of Ortega's house, and Ortega was indicted on charges relating only to what was found during that search. Moreover, the magistrate judge noted that Ortega's motion merely asserted his belief or speculation that disclosure may assist his defense. Accordingly, the magistrate judge found that the individuals were mere "tipsters" and disclosure should not be granted.

Ortega filed objections to the magistrate judge's report and recommendation, but the district court adopted it in full.

## C. Plea Agreement

Pursuant to a plea agreement, Ortega pleaded guilty to charges of (1) possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Ortega reserved the right to appeal the denials of his motion to suppress and motion to compel disclosure. Ortega was sentenced to 60 months for each of the charges to run consecutively, resulting in a total term of imprisonment of 120 months.

Ortega timely appeals and raises three issues: (1) the factual basis of his guilty plea was insufficient to support the firearm conviction; (2) the district court erred in denying his motion to compel disclosure with respect to the identities of CI-2 and Person 4; and (3) the district court erred in denying his motion to suppress the evidence obtained based on the search warrant. We address each argument in turn.

## II. ORTEGA'S CONVICTION UNDER 18 U.S.C. § 924(c)

Ortega challenges the sufficiency of the factual basis of his guilty plea

No. 16-50301

for his firearm conviction under 18 U.S.C. § 924(c).[4]  Relying on *Bailey v. United States*, 516 U.S. 137 (1995), and *United States v. Dickey*, 102 F.3d 157 (5th Cir. 1996), Ortega argues that the mere proximity of the firearm to the cocaine was insufficient to prove "use" under the statute, and instead, the Government was required to show that he actively employed the firearm in relation to his drug trafficking crime.  Thus, according to Ortega, the Government has failed to prove the "use" requirement of § 924(c).  Given that Ortega did not raise this argument in the district court, we review for plain error.  *United States v. Palmer*, 456 F.3d 484, 489 (5th Cir. 2006).

Ortega's argument, however, relies on outdated precedent: Congress effectively overruled *Bailey* with an amendment to § 924(c) criminalizing the "possession" of a firearm in furtherance of a drug trafficking crime.  *See Abbott v. United States*, 562 U.S. 8, 16–17 (2010) ("The 1998 alteration responded primarily to our decision in *Bailey* . . . .  Congress legislated a different result; in the 1998 revision, colloquially known as the Bailey Fix Act, the Legislature brought possession within the statute's compass." (citations and internal quotation marks omitted)).  "[P]ossession of a firearm in furtherance of [a] drug-trafficking offense is now a sufficient factual basis for a conviction under § 924(c)(1)," *United States v. Ruiz*, 533 F. App'x 361, 363 (5th Cir. 2013) (per curiam), and indeed, the superseding indictment charged Ortega with possession of a firearm in furtherance of a drug trafficking crime.  Thus, Ortega's reliance on *Bailey* is misplaced, and he has failed to show any error regarding his firearm conviction.

### III.  MOTION TO COMPEL DISCLOSURE

Ortega next contends that the district court erred in denying his motion

---

[4] Contrary to the Government's waiver argument, we interpret Ortega's argument as a challenge to the sufficiency of the factual basis rather than a challenge to the sufficiency of the evidence.

to compel disclosure with respect to the identities of CI-2 and Person 4. We review a district court's decision to grant or deny disclosure of a confidential informant's identity for abuse of discretion. *United States v. Ibarra*, 493 F.3d 526, 531 (5th Cir. 2007).

The Government has a privilege, usually referred to as the informer's privilege, "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). This privilege, however, is not absolute, and there is "no fixed rule" for when a confidential informant's identity should be disclosed. *Id.* at 60–62. Instead, the issue "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. We apply a three factor test to determine whether the identity of a confidential informant should be disclosed: "(1) the level of the informant's activity; (2) the helpfulness of the disclosure to the asserted defense; and (3) the Government's interest in nondisclosure." *Ibarra*, 493 F.3d at 531.

Here, the district court did not abuse its discretion in denying Ortega's motion to compel disclosure. Ortega contends that the district court abused its discretion because CI-2 and Person 4 are essential to his defense given that they are the only individuals who can contradict Parkinson's testimony, and without CI-2's allegations to support probable cause, there would have been no warrant, no search, and no indictment. But Ortega glosses over a key fact: although CI-2's information helped law enforcement secure the search warrant, neither CI-2 nor Person 4 was a witness to or active participant in the charged offenses (*i.e.*, possession of the drugs and firearms discovered during the search). Thus, the first factor weighs against disclosure. *See, e.g.*, *United States v. Edwards*, 133 F. App'x 960, 963 (5th Cir. 2005) (per curiam) ("[The defendant] was not charged with the sale of crack cocaine to the CI.

No. 16-50301

Although this information was used to obtain the search warrant, the CI did not actively participate in the search and, thus, was not a witness to [the] charged offense."). Moreover, Ortega has not demonstrated that the identities of CI-2 and Person 4 are essential to his defense beyond unsubstantiated speculation, and therefore, the second factor also weighs against disclosure. *See United States v. Orozco*, 982 F.2d 152, 155 (5th Cir. 1993) ("[M]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." (alteration in original) (quoting *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979))). Ortega had the opportunity to question Parkinson about what CI-2 told law enforcement, and as CI-2's and Person 4's potential testimony could only relate to probable cause, the underlying truthfulness of CI-2's allegations was not at issue because "the magistrate [was] concerned, not with whether the informant lied, but with whether the affiant [was] truthful in his recitation of what he was told."[5] *See United States v. Davis*, 443 F. App'x 9, 13 (5th Cir. 2011) (per curiam) (quoting *McCray v. Illinois*, 386 U.S. 300, 307 (1967)).[6] Accordingly, Ortega has failed to show that the district court abused its discretion in denying his motion to compel disclosure.[7]

## IV.  MOTION TO SUPPRESS

Finally, we turn to Ortega's argument that the district court erred in denying his motion to suppress. Ortega argues that his motion to suppress

---

[5] Ortega has not pointed to any evidence that CI-2 did not actually provide the tip about seeing cocaine in Ortega's possession to Jacinto.

[6] "Because the first two factors do not establish a case for disclosure, we need not consider the third factor." *Davis*, 443 F. App'x at 14.

[7] We also reject Ortega's argument that Person 4's identity is not entitled to any protection simply because Person 4 did not serve as an informant. Allowing the automatic disclosure of Person 4's identity under these circumstances likely would allow Ortega to deduce the identity of CI-2, thereby undermining the informer's privilege. Ortega points to no caselaw supporting his argument.

9

should have been granted because the search warrant was obtained based on an affidavit that contained false statements that were made intentionally or with reckless disregard for the truth, and once those false statements are excised, the affidavit's remaining content is insufficient to establish probable cause. *See Franks*, 438 U.S. at 155–56. "When reviewing a district court's ruling on a motion to suppress, we review its findings of fact for clear error and its legal conclusions de novo." *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002); *see also United States v. Alvarez*, 127 F.3d 372, 373 (5th Cir. 1997) ("Determinations of fact made by a district court in ruling on a motion to suppress are accepted unless the district judge's findings are clearly erroneous or influenced by an incorrect view of the law. Questions of law are reviewed *de novo*." (citation omitted)). Following a *Franks* hearing[8] on a motion to suppress, "[t]he district court's factual finding that the affiant officer did not deliberately or recklessly include the false statement in the affidavit cannot be disturbed unless it is clearly erroneous." *United States v. Looney*, 532 F.3d 392, 395 (5th Cir. 2008) (per curiam).

Under the Supreme Court's decision in *Franks*, a search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause. *Franks*, 438 U.S. at 155–56; *see also Alvarez*, 127 F.3d at 373–74 ("If a search warrant contains a false, material statement made intentionally or with reckless disregard for the truth, the reviewing court must

---

[8] Although the magistrate judge did not explicitly say that the evidentiary hearing was a *Franks* hearing, the hearing effectively served as a *Franks* hearing given that each party presented witnesses about the *Franks* issue. *See United States v. Namer*, 680 F.2d 1088, 1093 n.10 (5th Cir. 1982).

excise the offensive language from the affidavit and determine whether the remaining portion establishes probable cause."). Although the *Franks* inquiry is often described as two prongs, *see, e.g.*, *United States v. Gallegos*, 239 F. App'x 890, 895 (5th Cir. 2007), the inquiry effectively consists of three questions, all of which must be met. First, does the affidavit contain a false statement? *See, e.g.*, *United States v. Singer*, 970 F.2d 1414, 1416–17 (5th Cir. 1992) (affirming denial of motion to suppress because affidavit's statement was not false). Second, was the false statement made intentionally or with reckless disregard for the truth? *See, e.g.*, *Looney*, 532 F.3d at 394–95 (affirming denial of motion to suppress because affiant officer did not intentionally or recklessly include the false statement). And third, if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause? *See, e.g.*, *United States v. Froman*, 355 F.3d 882, 889–91 (5th Cir. 2004) (assuming that purportedly false statement should be excised and affirming denial of motion to suppress because remaining content in affidavit established probable cause). On appeal, Ortega argues that two statements in the affidavit were intentionally or recklessly made falsehoods: (1) CI-2 "did within the last 48 [hours] see a controlled substance, to wit Cocaine, in the possession of . . . Ortega . . . inside" his house; and (2) Parkinson "receive[d] information from a credible and reliable person who has on previous occasions given [Parkinson] information regarding the trafficking and possession of controlled substances which has proven to be true and correct."

We first turn to whether the affidavit contained false statements. Ortega has not shown that the first statement at issue—*i.e.*, CI-2 saw cocaine in Ortega's possession inside Ortega's house—is false. Ortega argues that CI-2 only purportedly saw cocaine in Ortega's possession *outside* the house, and thus, it was false to say that CI-2 saw cocaine in Ortega's possession *inside* the house. However, the magistrate judge, whose reasoning was adopted by the

district court, concluded that, although the language "was not as precise and definite as it could have been, [it] does appear to fairly fit the facts as they occurred." According to Parkinson's testimony at the hearing credited by the magistrate judge, CI-2 saw Ortega exit his house and then sell cocaine to Person 4, who was in the same car as CI-2. Thus, Ortega must have possessed the cocaine that was sold to Person 4 while he was inside his house given that he walked directly from his house to the car. Although the wording of the affidavit's statement is imprecise, it reasonably could be read as truthful. *See, e.g., Singer,* 970 F.2d at 1416–17 (holding that an affidavit's statement was not false because the wording used "could reasonably and sensibly be read" in a truthful manner); *United States v. Hare,* 772 F.2d 139, 141 (5th Cir. 1985) ("A statement in a warrant affidavit is not false merely because it summarizes or characterizes the facts in a particular way."). Thus, this statement is not false under *Franks*, and no further analysis of this statement is necessary.

Unlike the first statement, however, Ortega has shown that the second statement at issue—*i.e.*, Parkinson received the information from CI-2, who had previously provided Parkinson with credible and reliable information—is false. Simply put, the affidavit's statement that CI-2 had previously provided Parkinson with credible and reliable information is clearly false. Parkinson admitted that he had never worked with CI-2 previously; instead, CI-2 had worked with Jacinto, who in turn told Parkinson that CI-2 had provided reliable information in the past. Moreover, Parkinson testified that he did not actually receive the information from CI-2; instead, CI-2 spoke mostly in Spanish, a language that Parkinson does not understand, to Jacinto, who in turn (possibly later) translated the information for Parkinson. Although, during oral argument, the Government characterized the veracity of this statement as having "greyness" to it given that Parkinson did observe CI-2 speaking to Jacinto, we find this statement to be false. At most, Parkinson

observed Jacinto and CI-2 conversing mostly or entirely in a language that he could not understand, but a plain reading of the statement in the affidavit implies that it was Parkinson conversing with CI-2.[9] *See Namer*, 680 F.2d at 1094 ("The affidavit's statement is no less a misrepresentation because it manipulates the facts subtly."). Thus, this statement is false under *Franks*.

Given that the second statement is false, we must then confront the question of whether Parkinson acted with the necessary intent under *Franks* when including this false statement in his affidavit—*i.e.*, whether Parkinson made the false statement intentionally or with reckless disregard for the truth. "[T]he district court's determination of the affiant's state of mind—whether the affiant was lying intentionally, lying recklessly, or merely negligently misstating—is a factual finding that we have reviewed for clear error." *United States v. Neal*, 182 F. App'x 366, 370 (5th Cir. 2006); *see also, e.g.*, *Alvarez*, 127 F.3d at 375 (reversing as clearly erroneous a district court's determination that the affiant's false statement was only negligent). However, our review of the magistrate judge's report and recommendation, which was adopted in full by the district court, reveals that the magistrate judge did not make a finding regarding Parkinson's intent.[10] Instead, it appears that the magistrate judge found that there were no false statements in the affidavit, and thus, the

---

[9] Moreover, this does not appear to be a situation in which Jacinto was merely serving as a real time translator in a discussion between Parkinson and CI-2. Parkinson testified that he did not ask CI-2 any questions. And the magistrate judge surmised that Parkinson watched Jacinto interview CI-2 through a window in an interview room.

[10] The magistrate judge made a separate finding that the good-faith exception applied because the affidavit was not "bare bones." During oral argument, the Government contended that this finding constituted an implicit finding that Parkinson did not make any false statements intentionally or with reckless disregard for the truth. However, although the magistrate judge's wording could have been clearer, we do not read this separate finding as representing an implicit finding that Parkinson did not have the necessary intent under *Franks*. Instead, the magistrate judge was merely discussing the good-faith exception in the context of rejecting Ortega's argument that the affidavit was "bare bones," an argument that he does not renew on appeal.

magistrate judge (and therefore the district court) did not need to reach the question of intent.[11]

Even without an intent finding, we may still affirm the denial of the motion to suppress if, assuming that the false statement should be excised from the affidavit, the remaining content of the affidavit still establishes probable cause. "In determining whether probable cause exists without the false statements a court must 'make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit [minus the alleged misstatements], there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Froman*, 355 F.3d at 889 (alteration in original) (quoting *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994)); *see also Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Given that the state magistrate judge did not actually consider the excised affidavit, we must proceed "somewhat hypothetically" in determining whether the remaining content in the affidavit establishes probable cause.[12] *Namer*, 680 F.2d at 1095 n.12.

Here, assuming that Parkinson had the necessary intent such that the false statement should be excised, the remaining content in the affidavit would be insufficient to establish probable cause. Once the false statement is set aside, the excised affidavit would be left with a confidential informant's tip

---

[11] For example, the magistrate judge stated that she "does not conclude the search warrant affidavit contains materially false information or declines to state probable cause."

[12] Thus, "the normal presumption of validity attaching to a magistrate's probable cause finding does not apply." *Namer*, 680 F.2d at 1095 n.12.

about seeing cocaine in Ortega's possession without any further context or detail.[13]  Critically, there would no longer be any reference to the confidential informant's reliability or past history working with law enforcement.  *See, e.g.*, *United States v. Jackson*, 818 F.2d 345, 348–50 (5th Cir. 1987) ("In sum, the affidavit fails to demonstrate adequately the informant's veracity, reliability or his basis of knowledge so as to support probable cause for issuance of the arrest warrant."); *see also United States v. Mays*, 466 F.3d 335, 343–44 (5th Cir. 2006) (listing factors for determining whether an anonymous tip is reliable under the totality of the circumstances).  At most, the excised affidavit demonstrates that the police confirmed that Ortega lived at the house and saw an unspecified number of individuals briefly enter the house or engage in unknown hand-to-hand transactions with someone from the house.  But the excised affidavit provides no other indication that the tip was credible, let alone any other support for the allegation that cocaine would be found at the house, and the Government cites no caselaw finding probable cause on such limited facts.  Accordingly, under these circumstances, the excised affidavit is insufficient to establish probable cause.  *See, e.g.*, *United States v. Brown*, 567 F. App'x 272, 280–84 (5th Cir. 2014) ("[The affiant] attested that his confidential informant was reliable but did not provide any facts upon which the magistrate could rely to make his own determination as to the informant's

---

[13] We note that the parties did not address precisely what should be excised from the affidavit given that only one of the two statements at issue is false.  Arguably, because the affidavit falsely stated that Parkinson received the information from CI-2, all of the information from CI-2 should be excised.  However, we need not and do not decide whether this broader approach should be applied rather than the narrower approach described above (*i.e.*, excising only the statement that Parkinson received information from a confidential informant who had previously provided Parkinson with credible and reliable information).  As discussed *infra*, we find that, even assuming that the narrower approach is appropriate, the remaining content of the affidavit is insufficient to establish probable cause.

reliability.").

Thus, we must circle back to the factual question of whether Parkinson included the false statement intentionally or with reckless disregard for the truth. If Parkinson had the necessary intent, then the *Franks* test would be met. Conversely, if Parkinson did not have the necessary intent, then the *Franks* test would not be met. On the current record, we cannot say as a matter of law whether Parkinson possessed the requisite intent. For example, on the one hand, the statement was clearly false, and a cursory review by Parkinson of the two page affidavit may have revealed the falsity. On the other hand, Parkinson had no obvious motivation to lie because, as Ortega concedes, an affiant officer can rely on information from another officer to establish probable cause in an affidavit. *See Neal*, 182 F. App'x at 371 ("[W]e agree that the relevant misrepresentation was immaterial to the magistrate judge's finding of probable cause, a fact which, in addition to being directly relevant to the Fourth Amendment's probable cause determination (which we here pretermit), also provides circumstantial evidence of [the affiant's] good faith."). *But see United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983) ("This entire problem could have been avoided if [the affiant] had simply rewritten the affidavit to indicate that he was relying on his officers who had personally interviewed the informants. . . . The fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error."). In other words, if Parkinson had simply accurately stated that he had received CI-2's information from Jacinto and that CI-2 had provided Jacinto with reliable information in the past, then probable cause would likely have been found by the state magistrate judge.

Given these arguments, among others, we decline to make the initial factual finding about Parkinson's intent. *Cf. Froman*, 355 F.3d at 888 ("The absence of factual findings on whether Agent Binney's statements that all

16

members received all e-mails were intentional false statements or reckless misrepresentations precludes us from addressing whether the fruits of the search are protected by the good faith exception."). Accordingly, we vacate Ortega's convictions and sentences, and remand for the district court to determine whether Parkinson included the false statement intentionally or with reckless disregard for the truth. *See United States v. Guzman*, 739 F.3d 241, 248 (5th Cir. 2014); *see also United States v. Davis*, 663 F.2d 824, 830–31 (9th Cir. 1981). If after making the intent finding, the district court again denies Ortega's motion to suppress, the district court shall reinstate the convictions and sentences, and Ortega may then appeal. *Guzman*, 739 F.3d at 248–49.

## V.  CONCLUSION

For the foregoing reasons, we VACATE the convictions and sentences, and REMAND the case to the district court for further proceedings consistent with this opinion. Any subsequent appeal will be expedited and returned to this panel.