# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-50907

---

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2025

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DUSTIN E. SIEGERT,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:21-CR-96-1

---

Before JONES, OLDHAM, *Circuit Judges* and HENDRIX, *District Judge*.[*]

PER CURIAM:[†]

Dustin Siegert pled guilty to possession with intent to distribute at least 50 grams of methamphetamine and possession of a firearm by a convicted felon. The evidence underlying his indictment was found during a search of his property pursuant to a search warrant. The subject of the

---

[*] District Judge of the Northern District of Texas, sitting by designation.

[†] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 23-50907

warrant was unrelated to evidence of drugs or guns, but rather based on a stolen truck seen in the yard outside Siegert's home. He now challenges the constitutionality of the warrant, subsequent search, and related police questioning. Because no element of the warrant, search, or questioning violated the Constitution, the judgment of the district court is AFFIRMED.

I.

After seeing a stolen pickup truck on appellant Dustin Siegert's property, law enforcement officers applied for and obtained a search warrant to search Siegert's property, "8977 Deer Trail," for the truck, keys to the truck, and other instruments potentially associated with the theft such as cell phones. The warrant permitted the search of the entire premises, including inside Siegert's home.

Eight officers entered the property to execute the warrant, and two conducted an initial protective sweep of the home prior to locating Siegert. Upon entering the home, officers noticed a strong smell of marijuana and observed drugs and drug paraphernalia in plain view. While the two officers searched the inside of the home, officers outside located Siegert in his yard and seated him on the tailgate of a truck near the front of his home. Siegert and the officers talked for approximately ten minutes. Upon the officers' prompting, Siegert and the officers conducted a brief walkthrough of the home, where Siegert identified hidden guns and drugs. Siegert was returned to his seat on the tailgate of the truck, and officers then conducted a more thorough search of the home. After the search, Siegert was handcuffed, placed in a police car, and for the first time read his *Miranda* warnings.

The search of the home yielded two firearms, ammunition, methamphetamine, marijuana, a drug ledger, and drug paraphernalia. Officers additionally seized 180 grams of methamphetamine from Siegert's

car and four cell phones on Siegert's person that contained evidence of drugs, guns, and stolen property.

Unbeknownst to officers at the time of the search, the stolen truck was not on Appellant Dustin Siegert's property. Instead, it was just over the property line on his father Rick Siegert's adjacent lot. Viewed together, Siegert's and his father's properties form a twenty-acre rectangle abutting a road, Deer Trail Run, to the north of the property. Dustin Siegert's property is an approximately one-acre square carved out of the northwest corner of his father's land. Siegert's home is in the middle of his one-acre lot, and his property is bordered by fencing commonly used to manage the movement of livestock on rural property, and further subdivided by similar fencing within those lines. The father's property is empty except for a barn just on the other side of the livestock fence surrounding Siegert's one-acre plot. A large livestock gate in the fence between the two properties was kept open, and there is a well-worn vehicle path between the father's barn and Siegert's home through the gate. When asked for his address by officers, Siegert stated "8977 Deer Trail Run." The two properties share one driveway and one mailbox on Deer Trail Run, with "8977" written on its side. To the immediate right of the driveway is Siegert's home. To the immediate left of the driveway and just through the gate and well-worn path is his father's barn, accessible only through Siegert's property. The truck was found near the barn on his father's property, just outside Siegert's property on the other side of the livestock fence.

Siegert was charged by a grand jury in a two-count indictment for possession with intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Siegert moved to suppress evidence found pursuant to the search and statements he made during law enforcement questioning, alleging a

myriad of constitutional violations. His motion was denied. Siegert subsequently pled guilty to the indicted offenses. He was sentenced to 110 months imprisonment and a five-year term of supervised release. Siegert reserved his right to appeal solely for the purpose of challenging the district court's judgment denying his motion to suppress. He now exercises that right.

## II.

"In an appeal from a district court's ruling on a motion to suppress, this Court reviews factual findings in support of the ruling under the clearly erroneous standard and legal conclusions *de novo*." *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (citation omitted). "The evidence is viewed in the light most favorable to the party who prevailed in the district court," in this case the Government. *Id.*

## III.

Siegert raises six issues on appeal. Three relate to the legal sufficiency of the warrant and accompanying affidavit, and three relate to the circumstances of the search and related questioning. None warrants reversal of the district court's judgment.

## A.

Siegert argues that (1) the affidavit contained a false statement made intentionally or with reckless disregard for its truth, (2) the affidavit and search warrant were not sufficiently particular, and (3) the affidavit and search warrant were "bare bones." Therefore, he argues, the district court erred in failing to suppress evidence obtained from the search. "We engage in a two-step review of a district court's denial of a motion to suppress evidence obtained pursuant to a warrant: (1) whether the good-faith exception to the exclusionary rule applies; and (2) whether probable cause

supported the warrant." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citation omitted). We need not reach the issue of probable cause if the good faith exception applies. *Id.* The good faith exception would not apply if any one of Siegert's allegations is true. *See United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022) (en banc). Here, however, the good faith exception applies because the affidavit did not contain a false statement made intentionally or with reckless disregard for its truth, the warrant was not deficient in particularizing the place to be searched, and the warrant was not so lacking in probable cause as to render belief in its existence unreasonable.

1.

First, the affidavit supporting the search warrant did not contain a false statement made intentionally or with reckless disregard for its truth. "[A] search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978)). The initial burden rests with "the defendant to prove that false information was given intentionally or recklessly." *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002). "[T]he district court's determination of the affiant's state of mind—whether the affiant was lying intentionally, lying recklessly, or merely negligently misstating—is a factual finding that we have reviewed for clear error." *Ortega*, 854 F.3d at 827 (citations omitted) (alteration in original).

The district court found, and Siegert argues on appeal, that the affidavit included a false statement because it "incorrectly alleges that the truck would be found on Defendant's property, when the truck was, in fact,

across the property line of Defendant's father's adjacent land." The precise language of the affidavit, however, does not explicitly link the stolen truck to Siegert's property. The affidavit described the location to be searched as:

> A residence 8977 Deer Trail Hearne, Texas, which is in Robertson County. The residence is trailer house [*sic*] with siding that is light brown and dark green. The front door is white in color and faces North. The mailbox is in front of the residence and has number 8977 in bold black letters with white background [*sic*].

The affidavit additionally included an aerial photograph of the location. The affidavit stated that Dustin Siegert was the "person . . . [who] control[s] the location described above" and the truck "will be found at the location described above[.]"

Siegert cannot clear the threshold requirement that the affidavit includes false information. *See Ortega*, 854 F.3d at 826. The affidavit does not claim that the truck would be found on Siegert's property. Instead, it describes the premises to be searched and states that Dustin Siegert is the "person . . . [who] control[s] the location." Siegert does not contest the affidavit's assertion that he controls the location it describes. Nor does he contest the affidavit's accurate description of the residence and property. Rather, he simply parrots the district court's finding that the warrant included a false statement and repeatedly chastises the officers for failing to search for the "accurate" property address in a local online database.

But Siegert never states what the proper address should be or the property the affidavit should have identified. For good reason. When asked for his address during the search warrant, Siegert stated: "8977 Deer Trail Run." The local records indicate Siegert's "situs address" is "Deer Trail Run" and mailing address is "8977 Deer Trail Run Hearne, TX 77859," the address provided in the affidavit. While the property has since been sold to

new owners, a recent search confirms the address to the land is "8977 Deer Trail Run." Robertson Central Appraisal District, Property Search, *Property ID: 19950 For Year 2024* https://esearch.robertsoncad.com/Property/View/19950?year=2024 (last visited Dec. 19, 2024). The records further indicate that the address to his father's property is also "8977 Deer Trail Run," as does a recent search of the local records. Robertson Central Appraisal District, Property Search, *Property ID: 18973 For Year 2024*, https://esearch.robertsoncad.com/Property/View/18973 (last visited Dec. 19, 2024). The truck was found at the location described by the affidavit, even if that property was not owned by Siegert. *See Richardson v. Oldham*, 12 F.3d 1373, 1381 n.42 (5th Cir. 1994) ("[Warrants that] describe[] two or more different places which are not owned or occupied by the same individual should not be viewed as inherently in violation of the Fourth Amendment." (internal quotation marks and citation omitted) (alteration in original)).

Even if the search warrant did contain a false statement, it was not made intentionally or with reckless disregard for the truth. Agent Hutzler testified that he conducted surveillance on the property for approximately one hour. Given the open gate, the lack of significant fencing, and that the father's property was accessible only through the well-worn path on Siegert's property, Hutzler testified he "definitely" believed Siegert had full access to both properties. Hutzler testified he only "later . . . found out . . . [Siegert's] dad owned part of it[.]" The district court, noting the layout of the property with "no other fencing . . . home, driveway, or structure to suggest separate ownership of the two parcels of land," determined that "Agent Hutzler's inclusion of the wrong address cannot be characterized as intentional or reckless." From the street surveillance conducted by Agent Hutzler, there was significant evidence to suggest that the two properties are one and the same. *See United States v. Carrillo-Morales*, 27 F.3d 1054, 1063–64 (5th Cir.

1994) (officers acted reasonably in including incorrect address in warrant application when the same "number . . . was painted on the outside of that building" and "[t]he two buildings on the premises were similar in appearance and separated by an awning"). Given the layout of the two properties and the deference afforded to the district court's state of mind determination, the district court did not commit clear error when it concluded that Agent Hutzler did not act intentionally or recklessly. *See United States v. Glenn*, 935 F.3d 313, 321 (5th Cir. 2019).

Even if, as Siegert claims, law enforcement did not exercise "reasonable prudence" in failing to further investigate the truck's location, he still has not met his burden to show that "false information was given intentionally or recklessly." *See Cavazos*, 288 F.3d at 710. Siegert's citation to one non-binding case is not to the contrary, where an affiant's consultation with a county administrator for property records was one factor in finding that the affidavit's inclusion of an incorrect address was neither intentional nor reckless. *United States v. Mixon*, 69 F.3d 535, *3 (5th Cir. 1995) (unpublished). The affiant's consultation with a county administrator in *Mixon* reflects the fact-specific nature of the relevant inquiry rather than a prerequisite for an affidavit with incorrect information to pass constitutional muster. *See id.* The affidavit did not contain a false statement made intentionally or with reckless disregard for its truth.

2.

Second, the search warrant describes the place to be searched with sufficient particularity. Siegert argues that because the affidavit states only "that the stolen White Ford F250 . . . was taken to 8977 Deer Trail Run," but the truck "was not located on the specified area to search [*sic*]," the warrant was not sufficiently particular. A warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV. First, the magistrate was entitled to make the reasonable inference that the stolen truck was actively on Siegert's property from the affidavit's assertion that the truck "was taken to 8977 Deer Trail Run[.]" *See United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987). Second, notwithstanding the alleged error, the warrant described with significant specificity the property and residence to be searched, enabling officers to "with reasonable effort ascertain and identify the place intended." *See United States v. Darensbourg*, 520 F.2d 985, 987 (5th Cir. 1975) (quoting *Steele v. United States*, 267 U.S. 498, 503, 45 S. Ct. 414, 416 (1925)). The same officer who conducted surveillance authored the affidavit and executed the search, limiting the danger of "a random search." *See United States v. Scully*, 951 F.3d 656, 667–68 (5th Cir. 2020) (citation omitted). "[T]he object of the search authorized was clear." *See id.* (citation omitted).

Further, the officers acted reasonably and in good faith in assuming the search warrant covered both Siegert's and his father's land as one property. *See United States v. Melancon*, 462 F.2d 82, 93 (5th Cir. 1972) (error in identification of "property provides no basis for the invalidation of the search" when there was no "reason to divide the premises in two lots when the physical aspect of this whole set-up showed it was clearly one establishment with a worn pathway between the two and obviously [defendant] lived in one and worked in the other"); *Scully*, 951 F.3d at 666 (search permissible where "no signs or markings indicated that the [building] carried a separate address, and both structures were similar in appearance, were contained on a singular rectangular lot within the same fenced area, appeared to be connected by the same utility wires, and were connected by a sidewalk"); *see also Carrillo-Morales*, 27 F.3d at 1063–64; *United States v. Prout*, 526 F.2d 380, 388 (5th Cir. 1976). From all outward appearances there was only one property, not two. The officers acted in objectively reasonable good faith in relying on the warrant.

No. 23-50907

3.

Third, the search warrant affidavit was not "bare bones." Evidence obtained by officers in objectively good faith reliance upon a search warrant is admissible, regardless of probable cause, so long as the affidavit is not "so lacking in probable cause as to render official belief in its existence entirely unreasonable." *Morton*, 46 F.4th at 336 (citations omitted). "'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* (citation omitted).

Siegert argues that the affidavit's assertion that the truck's keys and that cell phones with evidence of theft could be found on the property is conclusory. But the affidavit plainly does not "allege only conclusions." *See id.* at 337. It explains in detail the circumstances from which law enforcement located the stolen truck on Siegert's property. It states that, while conducting surveillance from the roadway, an officer "was able to see the white [F]ord F250 . . . and confirm through communications that the white [F]ord F250 was stolen[.]" The affidavit states the affiant "know[s] through experience that those who buy and sell stolen property often utilize . . . cell phones" to "facilitate stolen property transactions[.]" It further explains that it is common for stolen cars to be accompanied by keys to that car.

An affidavit is not "wholly conclusory" when, as here, an affiant relies on "know[ledge] through training and experience" to justify the likelihood that evidence of criminal activity is on a suspect's cellphone. *See id.* at 337. While the affidavit contextualizes evidence related to the stolen truck, it does little to explain why Siegert might be a "stolen property dealer[]" or buyer. As a result, it may be a "close call" whether the affidavit established probable cause for the purchase or sale of stolen property rather than merely its possession. *See id.* at 338. If so, it may be "another close call whether there

10

was probable cause to believe that evidence" of the stolen property would be found on cellphones. *See id.* But close calls do not make an affidavit "bare bones" or "wholly conclusory." They are "precisely when the good-faith rule prevents suppression[.]" *Id.* And given the affidavit's statement that the stolen truck was present on the property, it included sufficient evidence for the magistrate to make the reasonable inference that keys tend to follow the car they are used to start. *See May*, 819 F.2d at 535. The affidavit was not so lacking in probable cause as to render belief in its existence unreasonable.

## B.

Siegert raises three additional issues regarding the circumstances of the search itself and his related statements to officers. He argues that (1) the "protective sweep" of his home was unlawful, (2) he did not provide voluntary consent for officers to search his home, and (3) statements he made to officers were the product of an un-*Mirandized* custodial interrogation. Contrary to these assertions, officers lawfully entered Siegert's home pursuant to a valid warrant, and he was not subject to custodial interrogation.

### 1.

First, the "protective sweep" of Siegert's home was permissible. Two officers conducted a brief initial search of the residence immediately upon entry onto Siegert's property. Siegert argues that the district court erred when it held that the officer's protective sweep was lawful. We need not decide whether the search falls within the protective sweep doctrine because the warrant permitted a complete search of Siegert's residence. *See Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094 (1990). Once a valid warrant is issued, "the officer's subjective intent in conducting the search is irrelevant," whether that be initially for officer safety or later for evidence of criminal activity. *United States v. Van Dreel*, 155 F.3d 902, 905

(7th Cir. 1998); *see also United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987) (en banc).

### 2.

Second, Siegert's consent was not necessary for officers to conduct a lawful search of his home. Siegert "is assured by the Fourth Amendment . . . not that no government search of his house will occur unless he consents; but that no such search will occur that is 'unreasonable.'" *See Illinois v. Rodriguez*, 497 U.S. 177, 183, 110 S. Ct. 2793, 2799 (1990) (quoting U.S. CONST. amend. IV). When officers act, as here, pursuant to a valid search warrant issued on probable cause, the ensuing search is reasonable. *See Buie*, 494 U.S. at 331, 110 S. Ct. at 1097. Siegert's consent was not necessary.

### 3.

Third, Siegert's statements to officers were not the product of a custodial interrogation. Siegert made a variety of incriminating statements to police while seated on the tailgate of a pickup truck in his yard shortly after the police entered the property. Siegert admitted to the presence of guns and drugs in his house, which police later found with Siegert's help. The conversation lasted approximately ten minutes. Siegert was not handcuffed. One officer, Agent Hutzler, questioned Siegert while two other officers stood nearby. Siegert contends that his incriminating statements should be suppressed because they were made before he received *Miranda* warnings. Siegert's un-*Mirandized* statements warrant suppression only if they were the product of a custodial interrogation. *See United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988). They were not.

"Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody. A suspect is 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable

person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest." *United States v. Ortiz*, 781 F.3d 221, 229 (5th Cir. 2015) (citation omitted). While no fact is dispositive, this court generally considers "(1) the length of the questioning, (2) the location of the questioning, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical movement, [and] (5) statements made by officers regarding the individual's freedom to move or leave." *Id.* at 229–30 (citation omitted) (alteration in original).

First, the questioning was brief and lasted approximately ten minutes. This court has held that questioning for longer periods of time is not indicative of a custodial interrogation. *See Ortiz*, 781 F.3d at 233 (thirty minutes of questioning suggests suspect was not in custody); *United States v. Wright*, 777 F.3d 769, 771 (5th Cir. 2015) (same for hour long questioning); *United States v. Coulter*, 41 F.4th 451, 463 (5th Cir. 2022) (same for fifteen minutes of questioning). The brief questioning here does not support a finding that Siegert was in custody pursuant to *Miranda*.

Second, the location of the questioning does not suggest that Siegert was subject to a custodial interrogation. The questioning occurred in Siegert's front yard within view of the public road in broad daylight. His front yard does not "present[] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509, 132 S. Ct. 1181, 1190 (2012); *but cf. United States v. Chavira*, 614 F.3d 127, 135 (5th Cir. 2010) (suspect in custody when questioned in a "windowless room in the presence of only Government agents"). "Passersby, on foot or in other cars" could have witnessed the interaction between Siegert and law enforcement. *See Berkemer v. McCarty*, 468 U.S. 420, 438, 104 S. Ct. 3138, 3149 (1984). Siegert's wife was nearby. *See Coulter*, 41 F.4th at 459 (questioning of suspect in front of home in presence

of family does not suggest suspect was in custody).  The location of Siegert's questioning weighs against a finding that he was subject to custodial interrogation.

Third, the nature of the questioning was not sufficiently accusatory to suggest that a reasonable person in Siegert's position would have equated it with formal arrest.  When informed about the search warrant, Siegert told officers, "I'll work with you . . . ."  Siegert told officers that another individual had brought the stolen truck to his property, which prompted officers to ask, for example, "who brought it" and "why did they bring the truck?"  Officer Hutzler asked, "is there anything else stolen on your property besides the truck?"  After seeing drugs in plain view, Officer Hutzler asked, "Is there any more dope? . . . I don't want to tear your place up.  I want you to go in there [and show me] . . . This is how I'd rather it go.  This is your house.  I'm not here to destroy your stuff.  You're going to walk in there with me and show me where all that dope is."  Officer Hutzler asked if Siegert had guns on the property and stated, "[w]e'll have to check on [the guns because you are a felon]."  Siegert replied,"[y]ou know I can't legally have [the guns]."

The tenor of the questioning "never became accusatory, much less threatening."  *See Coulter*, 41 F.4th at 460.  Instead, officers sought to work with Siegert to conduct the pending search in a minimally invasive manner after Siegert expressed his willingness to cooperate.  *See Wright*, 777 F.3d at 777 (non-accusatory given the "cooperative tone throughout" interview); *Coulter*, 41 F.4th at 459–60 (non-accusatory when officer "was merely appealing to [Defendant's] interests in being truthful and helpful during the search, rather than engaging in formal questioning").  The nature of the questioning does not support a finding that Siegert was subject to custodial interrogation.

Fourth, Siegert's physical movements were minimally restrained. "[S]ome *significant* restraint of freedom of movement must have occurred." *Coulter*, 41 F.4th at 460 (citation omitted) (emphasis in original). The presence of armed officers alone does not render an interview custodial. *United States v. Michalik*, 5 F.4th 583, 588–89 (5th Cir. 2021). Here, "[t]he agents never handcuffed or otherwise physically restrained [Siegert's] movement." *See id.* Nor was Siegert initially forced onto the tailgate or moved to a secondary location prior to the questioning. *See id.*; *United States v. Campos-Ayala*, 105 F.4th 235, 249 (5th Cir. 2024) (en banc). Siegert was not subject to a physical restraint comparable to formal arrest.

Fifth, officers did not explicitly suggest that Siegert was free to leave, nor did they suggest he was not free to leave. When Siegert asked the officers if they were going to "get out of [his] hair," Agent Hutzler responded that it "depends on what you got . . . how much you got in there . . . let's see what you got and go from there." Whether Siegert was told he was free to leave is not dispositive. Officers acting pursuant to a valid search warrant may temporarily detain the home's occupants, as such a brief detention is "significantly less intrusive than an arrest[.]" *See Michigan v. Summers*, 452 U.S. 692, 697, 101 S. Ct. 2587, 2591, 2595 (1981). It follows that such a detention while executing a search warrant is not a per se "restraint on freedom of movement to the degree which the law associates with formal arrest." *See Ortiz*, 781 F.3d at 229. Indeed, a "temporary detention, by itself, does not automatically rise to the level of custodial interrogation." *United States v. Nelson*, 990 F.3d 947, 956 (5th Cir. 2021); *see also Campos-Ayala*, 105 F.4th at 250 (while suspect "was not free to leave, he was not—as a matter of law—in custody"). This factor does not weigh in favor of finding Siegert to have been in custody.

No. 23-50907

Considering the totality of the circumstances, Agent Hutzler's brief colloquy with Siegert does not rise to the level of a custodial interrogation and therefore Siegert's statements should not be suppressed.

## IV.

The district court did not err in denying Siegert's motion to suppress evidence based on the affidavit and search warrant. Nor did the district court err in denying the motion to suppress evidence with respect to the officers' questioning of Siegert and search of his home. The district court's denial of Siegert's motion to suppress is accordingly AFFIRMED.